# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| TIM A. FISCHELL, ROBERT E. FISCHELL, AND DAVID R. FISCHELL, | ) ) ) | Case No. 1:15-cv-00184-PLM |
| Plaintiffs, | ) ) | Hon. Paul L. Maloney |
| vs. | ) ) |  |
| CORDIS CORPORATION, | ) ) |  |
| Defendant. | ) |  |

## CORDIS CORPORATION'S MEMORANDUM IN SUPPORT
## OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER

i

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND...................................................................................1

ARGUMENT.....................................................................................................2

I.   THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION. ................................................................3

    A.   Standard of Review...........................................................................3

    B.   The Amended Complaint's one conclusory sentence regarding jurisdiction does not meet this Circuit's pleading standards. ...............3

    C.   Leave should not be granted to replead the Fischells' jurisdictional claims because such an effort would be futile......................................4

        1.   This Court cannot exercise limited jurisdiction over Cordis because this case does not arise out of Cordis's Michigan contacts. ............................................................................4

        2.   Cordis is also not subject to general jurisdiction because it does not conduct a continuous and systematic part of its business in Michigan. .........................................................................6

II.  THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE.........................................................................7

    A.   Standard of Review...........................................................................7

    B.   Cordis's alleged actions occurred outside of this forum. ....................8

III. ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE TO THE DISTRICT OF NEW JERSEY IN THE INTEREST OF JUSTICE.........................8

    A.   Standard of Review...........................................................................8

    B.   This case could have been brought in the District of New Jersey. .........9

    C.   The parties' private interests favor the District of New Jersey. .............9

    D.   Transfer to the District of New Jersey is also in the public interest. ...................11

IV.  THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.........................................................................11

    A.   Standard of Review.........................................................................11

B.     Count I (Breach of Contract) ................................................................12

    1.     Count I identifies no contract provision that Cordis breached .................12

    2.     The Agreement's plain text refutes Count I ...............................................13

         (i)     The '99 Agreement does not require Cordis to "compel royalties" but, rather, gives Cordis complete discretion over enforcement. ........................................................13

         (ii)    The '99 Agreement does not require Cordis to keep records of Abbott's unlicensed sales or to pay royalties on such sales. ......................................................14

C.     Count II (Breach of Implied Covenant of Good Faith) .......................................15

    1.     Count II fails to allege that Cordis acted with an improper motive. ..............................................................................................15

    2.     Cordis did not deprive the Fischells of the benefit of their bargain. ..............................................................................................17

         (i)     Cordis's alleged purpose for settling with Guidant— increased sales—was reasonably within the parties' contemplation. .............................................................17

         (ii)    Cordis's enforcement decisions and royalty payments were expressly within the parties' contemplation. ........................17

D.     Count III (Breach of Fiduciary Duties) ...............................................................18

    1.     Count III is barred by the "economic loss doctrine" because it flows directly from the '99 Agreement. ................................................19

    2.     There was no fiduciary relationship between the parties. Exclusive patent licensees are not fiduciaries, and nothing about the '99 Agreement—pleaded or otherwise—could qualify Cordis as one. ............................................................19

E.     Count IV (Fraud and Fraudulent Concealment) ..................................................21

    1.     Count IV is not pleaded with particularity ...............................................21

    2.     Cordis's alleged misrepresentation was not material. .............................22

         (i)     Cordis did not need the Fischells' approval to waive pre-2004 "royalties." ............................................................22

        (ii)    The Guidant Settlement actually did waive pre-2004 infringement damages. ...............................................................22

    3.    The Fischells have not adequately pleaded reliance................................23

    4.    The Fischells were not damaged by the alleged misrepresentation.......................................................................................24

    5.    The Fischells' fraud claim is barred by the economic loss doctrine. ...............................................................................................24

F.    Count V (Unjust Enrichment)...............................................................................25

CONCLUSION.......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Alexander v. CIGNA Corp.*,
 991 F. Supp. 427 (D.N.J. 1998) ............................................................................20

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................ 1, 3, 12, 17

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................3, 12

*Beydoun v. Wataniya Restautrants Holding, Q.S.C.*,
 768 F.3d 499 (6th Cir. 2014) ............................................................................4

*Boardwalk Regency Corp. v. Unite Here Local 54*,
 No. 08-cv-0016, 2009 WL 540675 (D.N.J. Mar. 3, 2009) ....................................16

*Bracco Diagnostics Inc. v. Bergen Brunswig Drug Co.*,
 226 F. Supp. 2d 557 (D.N.J. 2002) ............................................................................25

*Burger King Corp. v. Rudewicz*,
 471 U.S. 462 (1985) ............................................................................5, 6

*Carrier Corp. v. Outokumpu Oyj*,
 673 F.3d 430 (6th Cir. 2012) ............................................................................12

*Chencinski v. Murga*,
 No. 13-cv-10519, 2013 WL 3810344 (E.D. Mich. July 23, 2013) ....................................3, 6, 7

*Cincinnati Ins. Co. v. O'Leary Paint Co.*,
 676 F. Supp. 2d 623 (W.D. Mich. 2009) (Maloney, C.J.) ....................................9, 11

*Cordis v. Boston Scientific*,
 868 F. Supp. 2d 342 (D. Del. 2012), *aff'd in relevant part*, 504 F. App'x 922 (Fed.
 Cir. 2013) ............................................................................2, 14

*Daimler AG v. Bauman*,
 134 S. Ct. 746 (2014) ............................................................................6, 7

*Daimler AG v. Shuanghuan Automobile Co.*,
 No. 2:11-cv-13588, 2013 WL 2250213 (E.D. Mich. May 22, 2013) ....................................6

*Dillon v. Watson Bowman Acme Corp.*,
 No. 02-C-9289, 2003 WL 22454024 (N.D. Ill. Oct. 27, 2003) ....................................10

*DRFP, LLC v. Republica Bolivariana de Venezuela*,
    945 F. Supp. 2d 890 (S.D. Ohio 2013) ................................................................................. 9

*Duquesne Light Co. v. Westinghouse Electric Co.*,
    66 F.3d 604 (3d Cir. 1995) ...................................................................................... 19, 24

*Eprotec Pres., Inc. v. Engineered Materials, Inc.*,
    No. 10-cv-5097, 2011 WL 867542 (D.N.J. Mar. 9, 2011) .................................................... 12

*F.G. v. MacDonell*,
    696 A.2d 697 (N.J. 1997) ................................................................................................ 20

*Frank v. Dana Corp.*,
    547 F.3d 564 (6th Cir. 2008) .......................................................................................... 22

*Gennari v. Weichert Co. Realtors*,
    691 A.2d 350 (N.J. 1997) ................................................................................................ 21

*Glenz v. RCI, LLC*,
    No. 09-cv-378, 2010 WL 323327 (D.N.J. Jan. 20, 2010) .................................................... 19

*Goodyear Dunlop Tires Operations v. Brown*,
    131 S. Ct. 2846 (2011) ..................................................................................................... 7

*Guava, LLC v. Doe*,
    No. 1:12-cv-02512, 2013 WL 950044 (N.D. Ohio Mar. 11, 2013) ........................................ 8

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ...................................................................................................... 11

*Hassler v. Sovereign Bank*,
    644 F. Supp. 2d 509 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d Cir. 2010) ......................... 16

*Heidelberg Brewing Co. v. North American Service Co.*,
    26 F. Supp. 342 (E.D. Ky. 1939), *aff'd*, 111 F.2d 897 (6th Cir. 1940) ................................. 13

*In re Stroming's Will*,
    79 A.2d 492 (N.J. Super. Ct. App. Div. 1951) .................................................................... 20

*Lanier v. American Board of Endodontics*,
    843 F.2d 901 (6th Cir. 1988) ............................................................................................ 5

*Longobardi v. Chubb Insurance Co. of New Jersey*,
    582 A.2d 1257 (N.J. 1990) .............................................................................................. 22

*Manahawkin Convalescent v. O'Neill*,
    85 A.3d 947, 958–59 (N.J. 2014) ..................................................................................... 13

*Martin v. New Trinidad Lake Asphalt Co.*,
    255 F. 93 (D.N.J. 1919) ................................................................................14

*Martin v. Stokes*,
    623 F.2d 469 (6th Cir. 1980) ..........................................................................2

*McKelvey v. Pierce*,
    800 A.2d 840 (N.J. 2002) ...............................................................................18

*New Jersey Bank v. Palladino*,
    389 A.2d 454 (N.J. 1978) ...............................................................................15

*Palisades Properties, Inc. v. Brunetti*,
    207 A.2d 522 (1965) ......................................................................................18

*Palnik v. Westlake Entertainment, Inc.*,
    344 F. App'x 249 (6th Cir. 2009) ....................................................................3

*Parenteau v. Century Bank*,
    No. 2:07-cv-851, 2008 WL 281626 (S.D. Ohio Jan. 31, 2008)........................8

*Phelps v. McClellan*,
    30 F.3d 658 (6th Cir. 1994) ............................................................................8

*Pioneer Surgical Technology, Inc. v. Vikingcraft Spine, Inc.*,
    No. 2:10-cv-251, 2011 WL 64239 (W.D. Mich. Jan. 7, 2011)........................7

*Prima Tek II, L.L.C. v. A-Roo Co.*,
    222 F.3d 1372 (Fed. Cir. 2000).......................................................................18

*Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*,
    893 F. Supp. 285 (S.D.N.Y. 1995)....................................................................20

*Rinks v. Hocking*,
    No. 1:10-cv-1102, 2011 WL 691242 (W.D. Mi. Feb. 16, 2011)......................10

*RNC Systems, Inc. v. Modern Technology Group, Inc.*,
    861 F. Supp. 2d 436 (D.N.J. 2012) ................................................................12

*Robinson v. Wheeling & Lake Erie Railroad Co.*,
    No. 1:09-cv-143, 2009 WL 3152969 (W.D. Mich. Sept. 28, 2009).................8

*Russell-Stanley Corp. v. Plant Industries, Inc.*,
    595 A.2d 534 (N.J. Super. Ct. Ch. Div. 1991)..................................................25

*South Machine Co. v. Mohasco Indus., Inc.*,
    401 F.2d 374 (6th Cir. 1968) ......................................................................4, 6

*Saltiel v. GSI Consultants, Inc.*,
    788 A.2d 268 (N.J. 2002) ................................................................................. 19

*Sons of Thunder, Inc. v. Borden, Inc.*,
    690 A.2d 575 (N.J. 1997) ................................................................................. 15

*Stanifer v. Brannan*,
    564 F.3d 455 (6th Cir. 2009) ............................................................................. 7

*State Capital Title & Abstract Co. v. Pappas Business Services, LLC*,
    646 F. Supp. 2d 668 (D.N.J. 2009) .................................................................. 24

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ............................................................................................. 3

*Steelcase Inc. v. Smart Technologies Inc.*,
    336 F. Supp. 2d 714 (W.D. Mich. 2004) .................................................. 10, 11

*United States v. Youngstown Sheet & Tube Co.*,
    171 F.2d 103 (6th Cir. 1948) ........................................................................... 14

*Universal Oil Products Co. v. Vickers Petroleum Co. of Delaware*,
    19 A.2d 727 (Del. Super. Ct. 1941) ................................................................ 23

*Water Technologies Corp. v. Calco, Ltd.*,
    576 F. Supp. 767 (N.D. Ill. 1983) ................................................................... 13

*Weingarten v. Weingarten*,
    560 A.2d 1243 (N.J. Super. Ct. App. Div. 1989) ............................................ 23

*Wilson v. Amerada Hess Corp.*,
    773 A.2d 1121 (N.J. 2001) .................................................................... 15, 16, 17

*Winslow v. Corporate Express, Inc.*,
    834 A.2d 1037 (N.J. Super. Ct. App. Div. 2003) ............................................ 25

## STATUTES

28 U.S.C. § 1391 ...................................................................................... 7, 8, 9

28 U.S.C. § 1391(b)(1) and (c)(2) .................................................................... 9

28 U.S.C. § 1391(b)(2) ..................................................................................... 7

28 U.S.C. § 1404 ................................................................................ 1, 3, 8, 9

28 U.S.C. § 1406 ................................................................................... 1, 2, 3

## OTHER AUTHORITIES

17 Moore's Federal Practice, § 111.13 ......................................................................10

4 Williston on Contracts § 610B (3d ed. 1961) ......................................................18

Federal Rule of Civil Procedure 8(a)(2) ...................................................................11

Federal Rule of Civil Procedure 5(b)(2) ..................................................................27

Federal Rule of Civil Procedure 9(b) .......................................................................21

Federal Rule of Civil Procedure 12(b)(2) .......................................................... 1, 2, 4

Federal Rule of Civil Procedure 12(b)(3) .......................................................... 1, 3, 7

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 1, 3, 11

## CORDIS CORPORATION'S MEMORANDUM IN SUPPORT
## OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER

Defendant Cordis Corporation ("Cordis") respectfully submits the following memorandum in support of its Motion to Dismiss or, in the Alternative, to Transfer this matter under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), and Title 28, Sections 1404(a) and 1406(a) of the United States Code.

### FACTUAL BACKGROUND

This is a New Jersey case regarding activities that took place in New Jersey, under contracts governed by New Jersey law, about which New Jersey witnesses will testify. Because the Court accepts Plaintiffs Tim A. Fischell, Robert E. Fischell, and David R. Fischell's (together, "the Fischells") allegations as true for the purposes of this motion, *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Cordis highlights only the facts most pertinent to this motion.

In 1999, the parties entered into an agreement involving patents directed to coronary stents (the " '99 Agreement"), which they amended in 2001 (the " '01 Amendment"). Under these agreements, the Fischells assigned Cordis certain patents (the "Fischell Patents") in exchange for a 1% royalty on sales of stents practicing the patents. *See* Compl. ¶¶ 15, 16, 20.[1] Cordis negotiated these agreements from its New Jersey offices, to be governed by New Jersey law, with Robert and David Fischell, who reside in Maryland and New Jersey, respectively. *See* Compl. ¶¶ 9, 63; Morano Decl. at ¶ 7; Coletti Decl. ¶¶ 7–8. Tim Fischell, who resides in Michigan but was not part of the negotiation, also signed the agreements. *See* Compl. ¶ 9; Morano Decl. ¶¶ 7–8; Coletti Decl. ¶ 7.

---

[1] Citations to the complaint refer to the amended complaint dated May 14, 2015. All citations to exhibits refer to the exhibits accompanying the May 14, 2015 amended complaint. Additionally, all citations to "Morano Decl." or "Coletti Decl.," refer to the declarations of Susan Morano and Paul Coletti, respectively, and are attached as Exhibits 1 and 2 to this memorandum.

The agreements gave Cordis exclusive enforcement and sublicensing rights over the patents. *Id.* at ¶¶ 17, 18. And, around early 2003, Cordis learned that Guidant Corporation was potentially infringing certain Fischell Patents. *Id.* at ¶ 21. Cordis and Guidant eventually resolved this and other disputes through a cross-licensing of technologies (the "Guidant Settlement"), which including a sublicense of certain Fischell Patents. *See id.* ¶¶ 26–27; Ex. F. This allowed Guidant to practice the Fischell Patents so long as it paid royalties to the Fischells on future sales of certain products. *See* Compl. ¶¶ 23, 26. And, under this sublicense, Abbott Laboratories (which purchased the relevant portion of Guidant in 2006), paid the Fischells $50–75 million in royalties. *Id.* ¶ 34. Abbott stopped paying, however, after a district court found (and the Federal Circuit affirmed) that its stents (being sold by Boston Scientific) actually did not infringe the relevant Fischell Patents. *See Cordis v. Bos. Scientific*, 868 F. Supp. 2d 342, 358 (D. Del. 2012), *aff'd in relevant part*, 504 F. App'x 922 (Fed. Cir. 2013); Compl. ¶¶ 41–44.

The Fischells allege that Cordis should now pay royalties on Abbott's behalf or that it should "compel" Abbott to pay them, presumably through a lawsuit. They also claim that Cordis misled them as to the true nature of the Guidant Settlement, depriving them of royalties.

### ARGUMENT

This case is brought in the wrong state, before the wrong court, over the wrong interpretation of a contract. This Court has several options for dispensing with this matter. First, it can find that it lacks personal jurisdiction over Cordis, because the only connection between this case and Michigan (pleaded or otherwise) is that the *least* involved plaintiff (Tim Fischell) lives there, and dismiss under Rule 12(b)(2) or transfer under Section 1406(a).[2] Second, it can find that venue is improper because the events giving rise to this case occurred in New Jersey or

---

[2] Though Section 1406(a) is "couched" in terms relating to venue, the "law in this Circuit" is that it provides a basis for transferring based on "either improper venue or lack of personal jurisdiction." *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980).

Maryland, not the Western District of Michigan, and dismiss under Rule 12(b)(3) or transfer under Section 1406(a). Third, even if the Court finds jurisdiction over Cordis and finds venue to be proper, it can and should still transfer this case in the interests of justice to the District of New Jersey, under Section 1404(a). And Fourth, on the merits, the Court can dismiss under Rule 12(b)(6) because the Fischells' claims are insufficiently pleaded, legally untenable, or both.[3]

## I. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

### A. Standard of Review

This Circuit applies the *Twombly/Iqbal* pleading standard to allegations of personal jurisdiction. *Chencinski v. Murga*, No. 13-cv-10519, 2013 WL 3810344, at \*5 (E.D. Mich. July 23, 2013) ("Current pleading standards require the plaintiff to allege specific facts in the complaint, and this standard also applies to findings of personal jurisdiction.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009) (non-precedential)). Thus, a complaint must "establish[] with reasonable particularity those specific facts that support jurisdiction." *Palnik*, 344 F. App'x at 251 (citations and internal quotation marks omitted).

### B. The Amended Complaint's one conclusory sentence regarding jurisdiction does not meet this Circuit's pleading standards.

The Amended Complaint offers no facts supporting jurisdiction over Cordis in Michigan. Rather, it parrots two provisions from Michigan's long-arm statute, without factual support. First, it alleges that Cordis "engaged in the transaction of business with Plaintiffs within the State of Michigan," Compl. ¶ 12, but it offers no facts in support of this claim. It does allege that one of the plaintiffs, Tim Fischell, resides in Michigan. *Id.* ¶ 9. But it does not explain Tim

---

[3] Cordis believes that the Amended Complaint is baseless, but because jurisdictional matters must be decided before the merits, it addresses them first. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).

Fischell's connection with this case besides that he and Robert Fischell were in *Hawaii* when Cordis representatives spoke by phone *with Robert* (who resides in Maryland). *Id.* ¶ 22.

Second, the Amended Complaint seeks to establish general jurisdiction by stating that "Cordis is a corporation that carries on a continuous and systematic part of its general business within the State of Michigan," but again offers no supporting facts. Compl. ¶ 12. Thus, the Amended Complaint fails to satisfy *Twombly/Iqbal* and must be dismissed under Rule 12(b)(2).

### C.     Leave should not be granted to replead the Fischells' jurisdictional claims because such an effort would be futile.

The Fischells should not be permitted to file another amended complaint to include factual allegations supporting specific jurisdiction in this Court because such factual support does not exist. The realities are that this case has almost nothing to do with Michigan, and that Cordis's contacts with Michigan are insufficient to subject Cordis to general jurisdiction.

### 1.     This Court cannot exercise limited jurisdiction over Cordis because this case does not arise out of Cordis's Michigan contacts.

This case has far too little connection with Michigan to allow limited personal jurisdiction over Cordis. The Sixth Circuit uses a three-part test for limited jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). "[T]he analysis on the first prong of the *Southern Machine* test involves some overlap with the analysis on the second prong." *Id.* at 507 (citations omitted). In short, a plaintiff must show a causal nexus between the defendant's contacts with the forum state and the alleged cause of action. *Id.* at 506–07.

4

The Fischells cannot show this causal nexus.  The only connection between Michigan and this case is that Tim Fischell—the least involved of the three plaintiffs who signed the '99 Agreement and '01 Amendment—happens to live there.  *See* Coletti Decl. ¶¶ 7, 9–10; Morano Decl. ¶¶ 7–9.  His contractual relationship with Cordis does not itself create jurisdiction over Cordis in Michigan.  *See Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 910 (6th Cir. 1988) (citing *Burger King Corp. v. Rudewicz*, 471 U.S. 462, 478 (1985)).  "Rather, prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing need to be addressed to evaluate, in a 'highly realistic' way, the intended future consequences that are 'the real object of the business transaction.' "  *Id.* (quoting *Burger King*, 471 U.S. at 478).  None of these factors point towards Michigan in this case.

**First**, the prior negotiations for the '99 Agreement and '01 Amendment took place outside of Michigan.  Paul Coletti and others negotiated the '99 Agreement for Cordis while located in New Jersey, Maryland, and/or Florida.  *See* Coletti Decl. ¶ 8.  And, he negotiated mostly with Robert and sometimes David Fischell (Maryland and New Jersey residents, respectively).  *Id.* at ¶ 7; Compl. ¶ 9.  Tim Fischell barely participated, if at all.  Coletti Decl. ¶ 7.  Similarly, for the '01 Agreement, Susan Morano negotiated and signed on behalf of Cordis, and she too negotiated almost entirely with Robert and David Fischell.  Morano Decl. ¶ 8; Ex. B.

**Second**, regarding contemplated future consequences of the agreements, Tim Fischell was not expected to be any more involved with the agreements' performance than he had been with their negotiation.  *See* Morano Decl. ¶ 9; Coletti Decl. ¶ 9.  Rather, Robert Fischell was expected to (and did) continue as the main contact.  *See* Ex. A at 7 ¶ 6.4; Morano Decl. ¶ 9; Coletti Decl. ¶¶ 9–10.  Also, the parties showed their understanding of one contemplated consequence of the agreements—litigation—through a choice-of-law provision selecting New

Jersey law. *Id.* ¶ 6.10; *Burger King*, 471 U.S. at 482 (choice-of-law provision showed the foreseeability of litigation in a specific state).

**Third**, the agreements' terms have no connection with Michigan, beyond reciting Tim Fischell's personal address. *See* Ex. A; Ex. B.

**Fourth**, the parties' alleged course of dealing under the agreements occurred outside of Michigan, with Robert Fischell again as the primary contact. *See* Ex. C (Feb. 22, 2004 email from Paul Coletti to Robert Fischell discussing the Guidant Settlement); Compl. ¶¶ 22–23 (Paul Coletti phoned Robert Fischell in Hawaii about the Guidant Settlement); *Id.* ¶ 28 ("Robert Fischell asked Coletti for a copy of the Guidant License."); Morano Decl. ¶ 9; Coletti Decl. ¶ 10.

**Finally**, as to "reasonableness," there would be nothing reasonable about hosting this case in a state so detached from Cordis's alleged actions. *See S. Mach.*, 401 F.2d at 381 ("[T]he acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."); *Daimler AG v. Shuanghuan Auto. Co.*, No. 2:11-cv-13588, 2013 WL 2250213, at \*7 (E.D. Mich. May 22, 2013) (finding it "unreasonable . . . to exercise personal jurisdiction given the extreme scarcity of [the defendant's] contacts with the forum state.").

### 2.    Cordis is also not subject to general jurisdiction because it does not conduct a continuous and systematic part of its business in Michigan.

As to general jurisdiction, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). "The Supreme Court has emphasized the *increased* level of business contacts with a forum state that must be met to satisfy general jurisdiction (as opposed to limited jurisdiction) in that a finding that a flow of a manufacturer's products to the forum state might be enough to allow for limited jurisdiction, but is not nearly enough for general jurisdiction." *Chencinski*,

2013 WL 3810344, at *6 (citing *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2855–56 (2011)) (emphasis added). Thus, "a corporation's 'continuous activity' in a forum state is not enough to warrant the corporation being amenable to suits that are unrelated to that activity." *Id.* (quoting *Goodyear*, 131 S. Ct. at 2855–56). Rather, the proper inquiry under *Goodyear* is whether a corporation's affiliations "are *so* 'continuous and systematic' as to render [it] essentially at home in the forum State." *Bauman*, 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851 (emphasis added) (alteration in original)).

Cordis's business contacts with Michigan do not come close to meeting this high bar. Cordis is neither incorporated in Michigan, nor is its principal place of business there. *See* Compl. ¶ 10. It has no physical property in Michigan. *See* Coletti Decl. ¶ 14. And only five of its hundreds of sales representatives reside in Michigan. *See id.*. That cannot make Michigan (as opposed to any other state) the legal equivalent of Cordis's home. Thus, this Court cannot exercise general jurisdiction over Cordis.

## II. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE.

### A. Standard of Review

Facing a challenge under Rule 12(b)(3), the plaintiff bears the burden of establishing that venue is proper. *Stanifer v. Brannan*, 564 F.3d 455, 459 n.1 (6th Cir. 2009). To do so, the plaintiff must show that "a substantial part of the events or omissions giving rise to the claim occurred" in the chosen district. 28 U.S.C. § 1391(b)(2). "[C]ourts often focus on the relevant activities of the defendant, rather than the plaintiff," in making such a determination. *Pioneer Surgical Tech., Inc. v. Vikingcraft Spine, Inc.*, No. 2:10-cv-251, 2011 WL 64239, at *2 (W.D. Mich. Jan. 7, 2011) (citations and internal quotation marks omitted).

**B.      Cordis's alleged actions occurred outside of this forum.**

As with personal jurisdiction, the Amended Complaint pleads venue only by reciting a statute.  *See* Compl. ¶ 13 ("Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred within this judicial district.").  That alone will not be sufficient.  *Guava, LLC v. Doe*, No. 1:12-cv-02512, 2013 WL 950044, at *4 (N.D. Ohio Mar. 11, 2013) (affirming prior *sua sponte* dismissal for lack of venue where the complaint only alleged "conclusory statements regarding venue").

Courts evaluate venue in contract disputes by looking to: (1) where the contract was negotiated and executed; (2) where the contract was performed; and (3) where the alleged breach occurred.  *Parenteau v. Century Bank*, No. 2:07-cv-851, 2008 WL 281626, at *3 (S.D. Ohio Jan. 31, 2008) (citation omitted).  And here, again, the only connection between this case and this Court is Tim Fischell's residency and status as a plaintiff, which does not support general jurisdiction over *Cordis*.  *Robinson v. Wheeling & Lake Erie Ry. Co.*, No. 1:09-cv-143, 2009 WL 3152969, at *7 (W.D. Mich. Sept. 28, 2009*).*  Because the negotiation, execution, performance, and alleged breach of the parties' agreements all occurred outside of this District, it is an inappropriate venue for this case.[4]  *See* Morano Decl. ¶¶ 6–9; Coletti Decl. ¶¶ 7–10.

## III.   ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE TO THE DISTRICT OF NEW JERSEY IN THE INTEREST OF JUSTICE.

### A.      Standard of Review

Section 1404(a) grants this Court "broad discretion," "for the convenience of parties and witnesses" and "in the interest of justice," to transfer an action to "any other district or division where it might have been brought."  *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)

---

[4] As to the place of execution, the varied dates of the signatures on the '99 Agreement and '01 Amendment suggest that the parties executed it without a formal meeting.  *See* Ex. A at 9 (stating that the '99 Agreement was "executed in duplicate"); Ex. B at 3.  According to the signature dates, Cordis's representative was the last to sign the contract.  *See id*.

(citations and internal quotation marks omitted). Relevant considerations include "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of interests of justice." *Cincinnati Ins. Co. v. O'Leary Paint Co.*, 676 F. Supp. 2d 623, 630–31 (W.D. Mich. 2009) (Maloney, C.J.) (citations and internal quotation marks omitted). Though a plaintiff's choice of forum is typically favored, this consideration is diminished where "the cause of action has little connection with the chosen forum." *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 902 (S.D. Ohio 2013).[5]

**B.  This case could have been brought in the District of New Jersey.**

As a threshold matter, the Fischells could have brought this case in the District of New Jersey, where David Fischell is a resident. Compl. ¶ 9. Cordis had long presence in New Jersey and maintains substantial business operations there. *See* Coletti Decl. ¶ 4. And Cordis availed itself of New Jersey's laws by negotiating and performing on the '99 Agreement and '01 Amendment in New Jersey, *see* Morano Decl. ¶¶ 6–9; Coletti Decl. ¶¶ 7–10; Ex. E, and the '99 Agreement is governed by New Jersey law, *see* Ex. A ¶ 6.10. New Jersey therefore has sufficient contacts to exercise personal jurisdiction over Cordis, and venue is proper in the District of New Jersey. *See* 28 U.S.C. § 1391(b)(1) and (c)(2).

**C.  The parties' private interests favor the District of New Jersey.**

Transferring this case to New Jersey will benefit virtually all involved except one of the plaintiffs. The relevant private interests to consider include: (1) convenience to the parties; (2) convenience to non-party witnesses; (3) access to evidence; (4) the availability of compulsory

---

[5] The Court should only reach the question of whether to transfer under Section 1404(a) if it decides that venue is proper in this district (which would entail a finding that a substantial portion of the events in this case occurred here). As this Section explains, even if the Court so finds, it should still transfer this case to the District of New Jersey in the interest of justice.

process; (5) the cost of obtaining willing witnesses; (6) cost and efficiency; and (7) the interests of justice. *Steelcase Inc. v. Smart Techs. Inc.*, 336 F. Supp. 2d 714, 719–20 (W.D. Mich. 2004) (citations omitted).  The factors pertaining to nonparty witnesses are often considered together. *Rinks v. Hocking*, No. 1:10-cv-1102, 2011 WL 691242, at *4 (W.D. Mi. Feb. 16, 2011).

**First**, it will be more convenient for Cordis to litigate in New Jersey than in the Western District of Michigan.  It maintains an office and operations in New Jersey and its potential employee-witnesses reside in or near New Jersey, whereas it has few if any operations and no relevant employees in the Western District of Michigan.  *See* Coletti Decl. ¶¶ 12, 14.  And New Jersey should be at least as convenient to the Fischells as the Western District of Michigan, since David Fischell lives in New Jersey and Robert Fischell lives in Maryland, which is closer to New Jersey than Michigan.  Comp. ¶ 9.  This factor therefore weighs in favor of transfer.

**Second**, New Jersey is also more convenient for nonparty witnesses.  This "has been called 'the most powerful factor governing the decision of whether to transfer a case.' " *McCuiston*, 313 F. Supp. 2d at 719 (quoting 17 Moore's Federal Practice, § 111.13(1)(f)(i)). And here, all known potential nonparty witnesses reside either in New Jersey or in states other than Michigan.  *See* Coletti Decl. ¶ 12.  The two most important witnesses, Paul Coletti and Susan Morano, both of whom negotiated with the Fischells, are both New Jersey residents and are employed by Cordis's corporate parent, Johnson & Johnson, at its headquarters in New Brunswick, New Jersey.  *See* Coletti Decl. ¶ 2; Morano Decl. ¶ 2; *Dillon v. Watson Bowman Acme Corp.,* No. 02-C-9289, 2003 WL 22454024, at *2 (N.D. Ill. Oct. 27, 2003) (treating officer of parent company as a non-party witness).  Additionally, another nonparty implicated by the Fischell's allegations is Abbott Vascular, which is located in Santa Clara, California.  *See* Ex. E. Cordis is not aware of any nonparty witnesses in Michigan.  The factors involving nonparty

witnesses therefore favor transfer.

**Third**, though the location of documentary evidence is not "particularly significant given the technological age in which we live," *Cincinnati Ins. Co.*, 676 F. Supp. 2d at 635 (citations and internal quotation marks omitted), to the extent this factor remains relevant, it favors transfer to New Jersey. Documents related to this case will either be located at Cordis's office in New Brunswick, New Jersey or in California. *See* Coletti Decl. ¶ 13. Cordis is not aware of any relevant documents in Michigan.

### D. Transfer to the District of New Jersey is also in the public interest.

The public interest also favors transfer to the District of New Jersey. Two factors are relevant here. First, the interest in having local controversies decided at home, *see Steelcase*, 336 F. Supp. 2d at 720, favors transfer because, as explained above, most of the alleged acts in this case occurred in New Jersey. Moreover, the Western District of Michigan has no unique local interest in this case that New Jersey lacks, because one plaintiff is from each state, and Cordis is located in New Jersey. Second, though Cordis does not doubt this Court's ability to apply New Jersey law, familiarity with governing law also supports transfer because the substantive legal issues of this case will be governed by New Jersey state law in accordance with the '99 Agreement. *See* Ex. A ¶ 6.10; *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).

## IV. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs cannot merely plead a set of facts "consistent with" a claim to relief; their complaint must contain enough "factual enhancement" to "nudge [] their claims across the line

from conceivable to plausible." *Twombly*, 550 U.S. at 557, 570.  When analyzing a complaint, "a court should first identify factual allegations that are entitled to a presumption of truth—that is, those allegations that are more than just legal conclusions."  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012) (citing *Iqbal*, 556 U.S. 662).  A court should then "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief."  *Iqbal*, 556 U.S. at 661.

### B.      Count I (Breach of Contract)

Under New Jersey law, a breach of contract claim has three elements: (1) the existence of a valid contract, (2) a breach of that contract, and (3) damages.[6]  *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 444–45 (D.N.J. 2012).  Count I fails to meet element two (breach) because (i) it does not identify any contractual provisions that Cordis allegedly breached and (ii) it is contradicted by the express terms of the parties' agreements.

#### 1.      Count I identifies no contract provision that Cordis breached.

"Under New Jersey law, a complaint alleging breach of contract must, at a minimum, identify the contracts and provisions breached."  *Eprotec Pres., Inc. v. Engineered Materials, Inc.*, No. 10-cv-5097, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011) (citation omitted).  "Failure to allege the specific provisions of contracts breached is grounds for dismissal."  *Id.* (citation omitted).  Here, Count I alleges that Cordis had obligations such as a duty to "compel" royalties from Abbott, *see* Compl. ¶66, but it does not specify the provisions that gave rise to these obligations (as explained below, none exist).  Count I must therefore be dismissed.

---

[6] Under the '99 Agreement's forum selection clause, this dispute is governed by New Jersey law. Compl. ¶ 63;  Ex. A ¶ 6.10.

### 2. The Agreement's plain text refutes Count I.

Turning to the '99 Agreement itself, not only does it contain no obligations to sue third parties like Abbott or to pay royalties on their behalf, it says the opposite.

### (i) The '99 Agreement does not require Cordis to "compel royalties" but, rather, gives Cordis complete discretion over enforcement.

The notion that Cordis was ever obligated to sue Abbott is contradicted both by the '99 Agreement's plain text and by settled principles of law. Where contractual language "is plain and capable of legal construction, the language alone must determine the agreement's force and effect." *Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 958–59 (N.J. 2014) (citations and internal quotation marks omitted). Here, Paragraph 2.12 of the '99 Agreement is the only provision pertaining to unauthorized use of the Fischell patents by a third party. It states that "CORDIS *may*, *in its discretion*, take *whatever action it believes to be necessary* against such third party." (emphasis added). It is impossible to read within this language an obligation for Cordis to "compel" anything from anyone.

Such an obligation also cannot be implied. It is a "settled point of law" that "there is no implied agreement by a licensor to protect the licensee by suing infringers." *Water Techs. Corp. v. Calco, Ltd.*, 576 F. Supp. 767, 772 (N.D. Ill. 1983) (citing Deller's Walker on Patents § 406 (2d ed. 1965)) (dismissing a breach of contract claim based on a failure to sue an infringer because the patent license agreement contained no express provision requiring such suits); *see also Heidelberg Brewing Co. v. N. Am. Serv. Co.*, 26 F. Supp. 342, 343 (E.D. Ky. 1939), *aff'd*, 111 F.2d 897 (6th Cir. 1940) (rejecting a similar breach of contract claim and stating that, an exclusive patent license, "with nothing more, falls far short of showing that the defendant guaranteed to prohibit persons over whom it had not control from infringing upon its patents or

13

warranted that it would protect plaintiff's exclusive use against all the world.") (citing *Martin v. New Trin. Lake Asphalt Co.*, 255 F. 93 (D.N.J. 1919)).

Just so here. Absent a provision in the '99 Agreement showing that Cordis affirmatively agreed to take legal action against anyone, it did not breach by failing to do so.

> **(ii)** **The '99 Agreement does not require Cordis to keep records of Abbott's unlicensed sales or to pay royalties on such sales.**

Count I also fails because it is based on the premise that Cordis agreed to keep records and pay royalties for Abbott's *unlicensed* sales. Once again the '99 Agreement, case law, and common sense say otherwise.

Starting again with the plain text, Section 2.13 is the sole provision dealing directly with sublicensing. It says that "CORDIS shall have the right to sublicense any of the [Fischell Patents] to a third party as long as the appropriate 1% ROYALTY is paid to the FISCHELLS in accordance with the terms of the AGREEMENT." Ex. A ¶ 2.13. This language seems clear: a royalty must be paid for any sales under a sublicense. But the Fischells overread it to require that *Cordis* step in and pay royalties when a sublicensee *violates* its sublicense by making unauthorized sales. *See, e.g.*, Compl. ¶¶ 35, 66. That is not what it says.

It is also not what the law requires. "Royalties," by definition, are payable only where property is used lawfully under a license, which is not what Abbott is claimed to be doing here. Compl. ¶¶ 6, 35–38, 42–48, 50–51; *see also United States v. Youngstown Sheet & Tube Co.*, 171 F.2d 103, 111 (6th Cir. 1948) ("The word 'royalty' commonly imports payment for permissive or lawful use of a property right, and not damages for a pirated or illegal appropriation of such property right." (citation and internal quotation marks omitted)).

Finally, charging Cordis for Abbott's alleged unauthorized sales would be unworkable as a matter of practical reality. Cordis is required to keep records of sales on which royalties are

payable—which the Fischells are permitted to audit—and to provide reports on such sales along with payments to the Fischells. Compl. ¶ 19, Ex. A ¶¶ 2.5, 2.6. Cordis could not have met these obligations if it were responsible for Abbott's unlicensed sales, because it has no access to Abbott's sales records. The Fischells' interpretation of the '99 Agreement cannot be correct.

### C. Count II (Breach of Implied Covenant of Good Faith)

Count II claims that Cordis also violated New Jersey's implied covenant of good faith and fair dealing. "[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997) (citations omitted). The covenant includes terms that "the parties must have intended . . . because they are necessary to give business efficacy to the contract." *N.J. Bank v. Palladino*, 389 A.2d 454, 461 (N.J. 1978) (citation omitted). And courts "must respect and give effect to the parties' bargain as expressed in the contract," including any discretion bargained for in the contract. *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1129–30 (N.J. 2001) (citation omitted). A party "breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract." *Id.* at 1130. Still, a court "must recognize the mutuality of expectation and enforce a party's contractual right to exercise discretion . . . based on its own reasonable beliefs concerning business strategy." *Id.* A plaintiff must therefore allege that the defendant had an improper motive. *Id.*

Count II fails both because it does not allege that (1) Cordis acted with an improper motive, or (2) that Cordis denied the Fischells the reasonably expected fruits of their agreement.

### 1. Count II fails to allege that Cordis acted with an improper motive.

Count II fails first because it does not plead that Cordis acted with an improper motive towards the Fischells. *Id.* at 1131 ("[A]n allegation of bad faith or unfair dealing should not be

permitted to be advanced in the abstract and absent an improper motive.  Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance.") (citations omitted);  Here, for four out of Cordis's five alleged breaches of the implied covenant), Count II pleads no alleged motive at all.  *See* Compl. ¶ 75(b)–(e).  These claims therefore fail at the outset.

A motive is offered for the fifth allegation, but it is not improper under New Jersey law. "[C]ontract law does not require parties to behave altruistically toward each other; it does not proceed on the philosophy that I am my brother's keeper."  *Wilson*, 773 A.2d at 1130 (citations and internal quotation marks omitted).  Thus, a plaintiff cannot "allege merely that its contractual partner exercised the discretion expressly afforded to it under the agreement to serve [its own] financial interests, or to maximize [its] profits, and that this decision worked to disadvantage the complaining party."  *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d Cir. 2010) (citations and internal quotation marks omitted) (alterations in original).  Rather, an improper motive is one that seeks "to destroy unilaterally the other's expectations *without legitimate purpose*," such as "intending to destroy plaintiffs economically." *Wilson*, 773 A.2d at 1130–31 (emphasis added).  "Thus, while a party that 'exercises its discretionary authority arbitrarily, unreasonably, or capriciously, *with the objective* of preventing the other party from receiving its reasonably expected fruits under the contract,' breaches the covenant of good faith, a party that exercises its discretion in order to further its own business interests without seeking intentionally to injure its contractual partner does not."  *Boardwalk Regency Corp. v. Unite Here Local 54*, No. 08-cv-0016, 2009 WL 540675, at *8 (D.N.J. Mar. 3, 2009) (quoting *Wilson*, 773 A.2d at 1130) (emphasis in *Boardwalk Regency*).

Here, Cordis is alleged to have deprived the Fischells of at least $25 million in "royalties" in settling with Guidant because it wanted access to technology that would help it sell more stents (seemingly a good thing for the Fischells).  Compl. ¶ 76.  True or false, a motive of increased sales is not one intended to intentionally injure the Fischells or destroy their expectations.  Thus, Count II fails.

### 2. Cordis did not deprive the Fischells of the benefit of their bargain.

Count II also fails because it does not allege that any of Cordis's alleged actions were outside the range of risks the Fischells assumed under the '99 Agreement.  *Wilson*, 773 A.2d at 1130.  Nor could the Fischells have reasonably made such a claim, based on the facts.

### (i) Cordis's alleged purpose for settling with Guidant—increased sales—was reasonably within the parties' contemplation.

Not only was Cordis's alleged purpose of increasing sales in settling with Guidant permissible under New Jersey law, it must also have been within the Fischells' contemplation under the '99 Agreement.  The Fischells knew going into the '99 Agreement that Cordis was a for-profit enterprise, so they must have contemplated that Cordis might use its unlimited enforcement discretion to further its own business interests.  *Iqbal*, 556 U.S. at 661 (requiring that factual allegations "plausibly suggest an entitlement to relief").

### (ii) Cordis's enforcement decisions and royalty payments were expressly within the parties' contemplation.

The Fischells again claim that Cordis breached the implied covenant by not paying or compelling royalties from Abbott.  *See* Compl. ¶ 75(b)–(d).  But the '99 Agreement expressly grants Cordis complete discretion over legal actions to protect the patents, in return for royalty payments where Cordis or its sublicensees use the patents.  Ex. A ¶¶ 2.12, 2.13.  The Fischells must have contemplated that Cordis might use its bargained-for discretion before suing third

parties, and that it would only pay royalties for its own sales or ensure that royalties were paid for its sublicensees' *licensed* sales. Thus, the implied covenant was not violated.

Actually, applying the implied covenant to erase Cordis's discretion or to expand its royalty obligations would do exactly what the implied covenant prohibits. *Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 531 (1965) ("In every contract there is an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' ") (quoting 4 Williston on Contracts § 610B (3d ed. 1961)). It would also upend an established principle of patent law. A patent "assignment," by definition, comes with "all substantial rights" in the patent, including exclusive enforcement and sublicensing rights. *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1379–80 (Fed. Cir. 2000). Thus, by definition, when the Fischells "assigned" Cordis their patents, Compl. ¶¶ 15, Cordis *must* have received exclusive enforcement and sublicensing rights. The Fischells' position would turn these rights into duties. It would obligate sublicensors to sue or pay royalties for their sublicensees' unlicensed sales. Such obligations should not be read into a patent assignment unless the parties put them there.

### D. Count III (Breach of Fiduciary Duties)

Count III claims that Cordis's rights under the '99 Agreement came with fiduciary obligations, which Cordis is alleged to have breached. Under New Jersey law, a party may be liable to another for harm resulting from a breach of duties imposed by the existence of a fiduciary relationship between the parties. *See McKelvey v. Pierce*, 800 A.2d 840, 859–60 (N.J. 2002). A breach of fiduciary claim requires (1) the existence of a fiduciary relationship between the parties, (2) a breach of that duty, and (3) damages. *Id.* (citations omitted).

Count III fails first because it attempts to transform a breach of contract claim into a tort claim and second because the parties were not fiduciaries.

18

### 1. Count III is barred by the "economic loss doctrine" because it flows directly from the '99 Agreement.

Count III rebrands the Fischells' contract claims as a tort, which is not allowed. New Jersey's "economic loss doctrine . . . prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995). "Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002) (citations omitted). Thus, a breach of fiduciary duty claim that flows from a contract is properly dismissed under the economic loss doctrine. *Id.* (rejecting a breach of fiduciary duty claim because, "[i]rrespective of the terminology used in the complaint, . . . this case is essentially a basic breach of contract case, and . . . plaintiff, through her tort allegations, simply is seeking to enhance the benefit of the bargain she contracted for") (citation omitted); *Glenz v. RCI, LLC*, No. 09-cv-378, 2010 WL 323327, at *5 (D.N.J. Jan. 20, 2010) ("Plaintiff's breach of fiduciary duty claim is barred by the economic loss doctrine because it flows directly from the parties' contract.").

Here, Count III flows directly from the '99 Agreement. *See* Compl. ¶¶ 81–83 (citing the agreements as the source of Cordis's alleged duties). It seeks to tack punitive damages onto the penalty for Cordis's alleged breach of contract. *Compare id.* ¶¶ 84, 87 (seeking punitive damages for alleged breaches of fiduciary duty), *with id.* ¶ 66 (alleged breaches of contract), *and id.* ¶ 75 (alleged breaches of implied covenant of fair dealing). It is therefore improper.

### 2. There was no fiduciary relationship between the parties. Exclusive patent licensees are not fiduciaries, and nothing about the '99 Agreement—pleaded or otherwise—could qualify Cordis as one.

The Fischells claim that, in being granted exclusive licensing rights, "Cordis assumed fiduciary duties to Plaintiffs to protect their intellectual property and to ensure that Plaintiffs

were paid the royalties they were owed." Compl. ¶ 83. We know of no precedent for such a claim. No court, to our knowledge, has ever recognized that exclusive licensing authority gives rise to fiduciary duties. Available precedent suggests the opposite. *See Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 289 (S.D.N.Y. 1995) (in a patent case, stating that "New York law holds . . . an arms-length licensor/licensee type relationship, without more, is not fiduciary in nature." (citations omitted)). And with good reason. Again, *every* patent assignment comes with exclusive licensing rights. *Prima Tex II*, 222 F.3d at 1379–80. If such rights create fiduciary duties, then all exclusive patent licensees are fiduciaries.

Regardless, there was no fiduciary relationship in this case. "[F]iduciary duties are not imposed in ordinary commercial business transactions." *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 438 (D.N.J. 1998) (citations omitted). Rather, a fiduciary relationship is created only when one party "is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 696 A.2d 697, 704 (N.J. 1997) (citations omitted). "The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position." *Id.* at 703–04. Thus, a fiduciary relationship is not created where the parties dealt on equal terms. *See Alexander*, 991 F. Supp. at 437 (citing *In re Stroming's Will*, 79 A.2d 492 (N.J. Super. Ct. App. Div. 1951)).

The Fischells have pleaded no facts showing that they entered into the '99 Agreement after placing "trust and confidence" in Cordis, that Cordis was in a dominant or superior position or, critically, that the '99 Agreement was made primarily for their benefit. Nor could they. Again, the '99 Agreement gave Cordis "unfettered" licensing discretion. Compl. ¶¶ 74, 83. It never hinted that this discretion came with super-contractual duties to place the Fischells' interests ahead of Cordis's own interests and business judgment. Instead, the '99 Agreement

20

precludes the existence of representations or duties beyond those "expressly contained" in its text. *See* Ex. A ¶ 6.8.  It should be honored.

### E.     Count IV (Fraud and Fraudulent Concealment)

Count IV arises from Cordis's 2004 settlement agreement with Guidant.  The Fischells allege that they were misled into believing that Cordis had waived the Fischells' right to pre-2004 "royalties" from Guidant when, in fact, Cordis had assumed liability for such royalties. Compl. ¶¶ 92–94.  The elements of fraud in New Jersey are: (1) material misrepresentation of a presently existing or past fact, or deliberate suppression of a material fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance by the other person; and (5) damages.  *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997) (citation omitted).

Count IV fails for five reasons.  First, it is not pleaded with the particularity required by Federal Rule of Civil Procedure 9(b).  Second, Cordis's alleged misrepresentation would not have been material.  Third, the Fischells have not adequately pleaded that they relied on Cordis's alleged misrepresentation.  Fourth, the Fischells cannot show damages based on the alleged misrepresentation.  Finally, because this tort claim arises from Cordis's performance of the '99 Agreement, it is again barred by the economic loss doctrine.

### 1.     Count IV is not pleaded with particularity.

Count IV rests on a claim that Cordis misrepresented that it "had made the best deal that it could" on the Fischells' behalf when it agreed to waive pre-2004 "royalties" from Guidant. Compl. ¶¶ 30, 96.  No further details are provided regarding this alleged misrepresentation.  This does not satisfy the requirement to plead fraud "with particularity."  Fed. R. Civ. P. 9(b).  Rather, the Fischells "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (citation and internal quotation marks omitted).  While the Fischells have alleged that a particular Cordis employee—Paul Coletti—told them at specific times and places that Cordis had waived rights to pre-2004 royalties, *see* Compl. ¶¶ 21–25, 28–30, no such details are provided for the supposed "best deal" misrepresentation.  It therefore cannot serve as a basis for a fraud claim.

### 2. Cordis's alleged misrepresentation was not material.

Even if Cordis misrepresented the terms of its settlement with Guidant, any such misrepresentation was immaterial.  Cordis did not need the Fischells' approval to waive pre-2004 infringement claims, and the omitted contractual language gave the Fischells no rights.

### (i) Cordis did not need the Fischells' approval to waive pre-2004 "royalties."

Cordis's alleged misrepresentation about having waived pre-2004 infringement claims could not have been material because Cordis did not need the Fischells' approval to waive the claims (and the Fischells have not pleaded otherwise).  A representation is "material" if the plaintiff "would have considered the misrepresented fact relevant to its concerns and important in determining its course of action." *Longobardi v. Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1263 (N.J. 1990) (citations omitted).  Here, Cordis had complete, *exclusive* licensing and enforcement rights and discretion, and therefore could have waived infringement damages with or without the Fischells' approval.  Compl. ¶¶ 17, 73–74, 81; Ex. A ¶¶ 2.12, 2.13.  Because the Fischells' approval was unnecessary, any misrepresentations allegedly made to gain the Fischells' approval for the Guidant Settlement would have been immaterial.

### (ii) The Guidant Settlement actually did waive pre-2004 infringement damages.

Cordis's alleged misrepresentations were also immaterial because no pre-2004 "royalties" would have been payable under the Guidant Settlement.  The Fischells claim "that

Cordis and Guidant had actually agreed that Cordis would be responsible for paying Plaintiffs royalties for the royalty-bearing stents Guidant had manufactured and sold prior to February 2004." *Id.* ¶ 93 (emphasis omitted). But what the Guidant Settlement actually said was that any such royalties "shall be waived and, *if payable,* paid by CORDIS." Ex. F § 2(d) (emphasis added). The Fischells leave out this all-important "if" (ironically misrepresenting the provision they claim contained Cordis's misrepresentation). But it makes Cordis's alleged omission immaterial because it describes a situation that could never have happened. Pre-2004 royalties could never have become "payable" because it would have taken an infringement suit by Cordis to make them payable, and Cordis agreed not to file such a suit in the Guidant Settlement.[7]

### 3. The Fischells have not adequately pleaded reliance.

To plead reliance, the Fischells must allege that, "but for" Cordis's actions, the Fischells would not have been damaged. *Weingarten v. Weingarten*, 560 A.2d 1243, 1248 (N.J. Super. Ct. App. Div. 1989) (citations omitted). Count IV contends that "[t]he Fischells relied on Cordis's [alleged misrepresentations], and did not make further attempts to acquire a complete copy of the Guidant License from Cordis or to pursue royalties from Cordis or Guidant for Guidant's pre-February 2004 sales of royalty-bearing stents." Compl. ¶ 96. This statement does not plead "but for" causation. It does not allege that the Fischells failed to pursue "royalties" *because of*

---

[7] Though the Complaint and Guidant Settlement use the terms loosely, any money owed for infringement of the Fischell Patents before the Guidant License would be infringement damages, not "royalties." Again, "royalties" are payable only for lawful uses of a patent (*e.g.*, under a license), while damages are for unlawful uses, as alleged here. *See* Section IV(B)(2)(ii), *supra*. Moreover, a patent license cannot retroactively license past use of a patent, it can only waive infringement damages. *See, e.g.*, *Universal Oil Prods. Co. v. Vickers Petroleum Co. of Del.*, 19 A.2d 727, 729 (Del. Super. Ct. 1941) ("It is somewhat difficult to understand what is meant by a 'retroactive implied license.' A license in its very nature is prospective in operation."). Indeed, the '99 Agreement reflects this distinction. Paragraph 2.12 governs infringement damages while Paragraph 2.13 governs sublicensing and royalty payments. *See* Ex. A ¶¶ 2.12, 2.13.

Cordis's alleged actions (nor could it, as only Cordis had the right to enforce the patents, *see* Ex. A § 2.12).  Thus, Count IV fails for lack of reliance.

### 4. The Fischells were not damaged by the alleged misrepresentation.

Even if Cordis caused the Fischells not to "make further attempts to acquire a complete copy of the Guidant License from Cordis or to pursue royalties from Cordis or Guidant," Compl. ¶ 96, it is unclear how this entitles the Fischells to "the value of unpaid royalty payments for Guidant's pre-February 2004 sales," *id.* ¶ 102.  First and most basic, the Fischells never allege that such royalties actually were "payable" (which, as explained above, they were not), let alone explain how they could have been.

Second, the Fischells only suffered damages if they could have obtained royalties from Guidant or Cordis in 2004 and cannot do so now.  This is neither pleaded nor true.  The Fischells could not have sued Guidant in 2004 because Cordis had exclusive enforcement rights over the patents.  Compl. ¶ 17; Ex. A ¶ 2.12.  And, if the Fischells believe otherwise, they offer no reason why they could not pursue "royalties" from Guidant today.  As to Cordis, this lawsuit dispenses with the notion that the Fischells have lost any ability to pursue pre-2004 royalties that they previously had.  *See, e.g.*, Compl. ¶¶ 75(a), 84(a) (seeking damages of $25 million).  Thus, there are no damages from Cordis's alleged misrepresentation.

### 5. The Fischells' fraud claim is barred by the economic loss doctrine.

The Fischells cannot bring a fraud claim for what is actually an alleged breach of a contract.  The economic loss doctrine again "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co.*, 66 F.3d at 618.  While New Jersey state courts have not definitively established whether economic loss doctrine applies to fraud claims, New Jersey federal "district courts have consistently applied the economic loss doctrine to fraud and negligent misrepresentation claims." *State*

*Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 678 (D.N.J. 2009) (citation omitted). "The pattern that has emerged in New Jersey decisional law is that claims for fraud in the performance of a contract, as opposed to fraud in the inducement of a contract, are not cognizable under New Jersey law." *Bracco Diagnostics Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 564 (D.N.J. 2002). Here, the Fischells' fraud allegations relate solely to Cordis's performance under the '99 Agreement. *See, e.g.*, Compl. ¶ 7. That agreement governs the parties' relationship as well as Cordis's enforcement and licensing rights. Thus, the Fischells' "fraud claim is not extrinsic to their underlying contract claims" and "is not cognizable as a separate cause of action." *See Bracco*, 226 F. Supp. 2d at 564.

F.    **Count V (Unjust Enrichment)**

In Count V, the Fischells claim unjust enrichment based on alleged benefits received by Cordis. This claim fails as a matter of law because the subject matter in dispute is already expressly governed by an enforceable contract. "[A] prerequisite to an implied contract claim for unjust enrichment is that there is no express contract concerning the same matter." *Russell-Stanley Corp. v. Plant Indus., Inc*., 595 A.2d 534, 550 (N.J. Super. Ct. Ch. Div. 1991) (citation omitted). And here, the Fischells are claiming that the '99 Agreement is an enforceable contract governing the rights underpinning their unjust enrichment claim. *See, e.g.*, Compl. ¶¶ 61–69 (Count I - Breach of Contract); 106 ("Plaintiffs . . . grant[ed] Cordis the right to use and sub-license Plaintiffs' patents"); 107 ("Cordis then used its *contractual* right to sub-license Plaintiffs' patents . . . as a bargaining chip.") (emphasis added). "In light of this express contract, there is no basis or need for plaintiff to pursue a quasi-contractual claim for unjust enrichment." *Winslow v. Corporate Express, Inc.*, 834 A.2d 1037, 1046 (N.J. Super. Ct. App. Div. 2003).

**CONCLUSION**

For the foregoing reasons, the Court should dismiss or transfer this case.

25

Dated: June 18, 2015                    Respectfully submitted,

By: */s/ Douglas A. Dozeman*
    Douglas A. Dozeman
    Michigan Bar # P35781
    WARNER NORCROSS & JUDD LLP
    900 Fifth Third Center
    111 Lyon St NW
    Grand Rapids, Michigan 49503-2487
    Telephone: (616) 752-2000
    ddozeman@wnj.com


    Mark L. Whitaker
    Andrew T. George
    Mark S. Zhai
    Han K. Lee
    BAKER BOTTS L.L.P.
    The Warner
    1299 Pennsylvania Ave., NW
    Washington, D.C. 20004-2400
    Telephone: (202) 639-7700
    Facsimile: (202) 639-7890

    *Attorneys for Cordis Corporation*