**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| TIM A. FISCHELL, ROBERT E. FISCHELL, AND DAVID R. FISCHELL, | ) ) ) | |
| Plaintiffs, | ) | Case No. 1:15-cv-00184-PLM |
| vs. | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| CORDIS CORPORATION, | ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO CORDIS'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ......................................................................................................1

II.     CORDIS IS SUBJECT TO PERSONAL JURISDICTION IN THIS COURT..................3

        A.      Legal Standard ..........................................................................................3

        B.      This Court Has Personal Jurisdiction Over Cordis Because Plaintiffs'
                Claims Arise Out Of Cordis's Commercial Activities in Michigan ......................4

III.    VENUE IS PROPER IN THIS COURT AND CORDIS CANNOT MEET ITS HEAVY
        BURDEN TO JUSTIFY TRANSFERRING THIS ACTION TO NEW JERSEY .............5

        A.      Venue Is Proper in This Court Because a Substantial Portion of the Events
                Giving Rise to This Action Occurred in This Jurisdiction ....................................5

        B.      Cordis Cannot Meet its Heavy Burden to Justify Transferring This Action
                to Cordis's Preferred Venue in New Jersey.........................................................7

                1.      Legal Standard ........................................................................................7

                2.      Transfer for Cordis's convenience does not outweigh the strong
                        presumption in favor of the Fischells' chosen forum ................................8

IV.     THE FISCHELLS STATE CLAIMS FOR RELIEF IN EACH COUNT OF THE FIRST
        AMENDED COMPLAINT ..............................................................................................11

        A.      Count I (Breach of Contract) ...............................................................................11

                1.      The First Amended Complaint identifies the contract and the
                        provisions Cordis breached.......................................................................11

                2.      The First Amended Complaint states a valid claim for breach of
                        contract...................................................................................................12

        B.      Count II (Breach of Implied Covenant of Good Faith)..........................................14

                1.      The First Amended Complaint adequately pleads improper motive .........14

                2.      The First Amended Complaint fully alleges that Cordis's actions
                        deprived the Fischells of the benefit of their bargain ...............................16

        C.      Count III (Breach of Fiduciary Duties).................................................................17

                1.      The First Amended Complaint properly alleges the existence of a
                        fiduciary relationship between Cordis and the Fischells ...........................17

i

2.      The economic loss doctrine does not bar the Fischells' claim for
        breach of fiduciary duties..........................................................................19

D.      Count IV (Fraud and Fraudulent Concealment) ....................................................20

1.      The Fischells have pled the elements of fraud...........................................20

2.      The Fischells' fraudulent inducement claim is not barred by New
        Jersey's economic loss doctrine................................................................23

E.      Count V (Unjust Enrichment)..................................................................................25

V.   CONCLUSION.........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aerotel, Ltd. v. Sprint Corp.*,
  100 F. Supp. 2d 189 (S.D.N.Y. 2000) ..................................................................10

*Ajuba Int'l, LLC v. Saharia*,
  871 F. Supp. 2d 671 (E.D. Mich. 2012) ...........................................13, 14, 16, 25

*Alin v. Am. Honda Motor Co., Inc.*,
  No. 08-4825 (KSH), 2010 WL 1372308 (D.N.J. Mar. 31, 2010) ....................14, 15

*Am. Fin. Res., Inc. v. Countrywide Home Loans Servicing, LP*,
  No. 12-7141 ES, 2013 WL 6816394 (D.N.J. Dec. 23, 2013) ...............................24

*AT&T Credit Corp. v. Zurich Data Corp.*,
  37 F. Supp. 2d 367 (D.N.J. 1999) ........................................................................11

*Aug. v. Manley Toys, Ltd.*,
  No. 13-13894, 2014 WL 5847627 (E.D. Mich. 2014) ............................................4

*Banco Popular N. Am. v. Gandi*,
  876 A.2d 253 (2005) ......................................................................................21, 22

*Beydoun v. Wataniya Rests. Holding, Q.S.C.*,
  768 F.3d 499 (6th Cir. 2014) ................................................................................4

*Boardwalk Regency Corp. v. Unite Here Local 54*,
  No. 08-cv-0016 (JBS), 2009 WL 540675 (D.N.J. Mar. 3, 2009) ...........................15

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*,
  226 F. Supp. 2d 5574 (D.N.J. 2002) .....................................................................24

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*,
  864 A.2d 387 (N.J. 2005) .....................................................................................15

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ...............................................................................................5

*Carrier Corp. v. Outokumpu Oyj*,
  673 F.3d 430 (6th Cir. 2012) ................................................................................11

*Cincinnati Ins. Co. v. O'Leary Paint Co.*,
  676 F. Supp. 2d 623 (W.D. Mich. 2009) ............................................................8, 10

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
   181 P.3d 142 (Cal. 2008) ......................................................................................22

*CompuServe, Inc. v. Patterson*,
   89 F.3d 1257 (6th Cir. 1996) ..................................................................................5

*Connecticut Gen. Life Ins. Co. v. Roseland Ambulatory Ctr. LLC*,
   No. 2:12-CV-05941 (DMC), 2013 WL 5354216 (D.N.J. Sept. 24, 2013) ............25

*D'Ancona & Pflaum LLC v. M2 Software, Inc.*,
   No. 00 C 7150, 2001 WL 873021 (N.D. Ill. Aug. 2, 2001) ....................................6

*D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*,
   No. CIV.A. 03-1026 (MLC), 2007 WL 4554208 (D.N.J. Dec. 21, 2007) *aff'd*,
   552 F. App'x 110 (3d Cir. 2014) ...........................................................................24

*D&D Tech., Inc. v. Cytocore, Inc.*,
   No. 14-4217, 2014 WL 4367314 (D.N.J. Sept. 2, 2014) ......................................20

*Decosta v. English*,
   No. 11-2651 (MAH), 2012 WL 528760 (D.N.J. Feb. 16, 2012) ...........................11

*Dewey v. Volkswagen AG*,
   558 F. Supp. 2d 505 (D.N.J. 2008) .......................................................................25

*Diamond Computer Sys., Inc. v. SBC Commc'ns, Inc.*,
   424 F. Supp. 2d 9700 (E.D. Mich. 2006) .............................................................20

*Dillon v. Watson Bowman Acme Corp.*,
   2003 WL 22454024 (N.D. Ill. Oct. 27, 2003)........................................................9

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
   66 F.3d 604 (3d Cir. 1995).....................................................................................19

*Emerson Radio Corp. v. Orion Sales, Inc.*,
   253 F.3d 159 (3d Cir. 2001).......................................................................14, 16, 17

*Eprotec Pres., Inc. v. Engineered Materials, Inc.*,
   No. 10-5097, 2011 WL 867542 (D.N.J. Mar. 9, 2011) ........................................12

*Evans Tempcon, Inc. v. Index Indus., Inc.*,
   778 F. Supp. 371 (W.D. Mich. 1990) ..................................................................3, 7

*Fenning v. Am. Type Founders, Inc.*,
   109 A.2d 689 (N.J. 1954).......................................................................................17

*F.G. v. MacDonell*,
   696 A.2d 697, 704 (N.J. 1997) ..............................................................................17

*Gen. Ret. Sys. of City of Detroit v. UBS, AG*,
    799 F. Supp. 2d 749 (E.D. Mich. 2011)................................................................22

*Gleason v. Norwest Mortgage, Inc.*,
    243 F.3d 130 (3d Cir. 2001)................................................................20, 24

*Glenz v. RCI, LLC*,
    No. 09-cv-378, 2010 WL 323327 (D.N.J. Jan. 20, 2010)......................................20

*Green v. Wilson*,
    565 N.W.2d 813 (Mich. 1997)................................................................4

*Hassler v. Sovereign Bank*,
    644 F. Supp. 2d 509 (D.N.J. 2009) ................................................................15

*J.L. Davis & Associates v. Heidler*,
    622 A.2d 923 (N.J. Super. Ct. App. Div. 1993)................................................................13

*Kelly Servs. v. Eidnes*,
    530 F. Supp. 2d 9409 (E.D. Mich. 2008)................................................................6

*Klein v. Budget Rent a Car Sys., Inc.*,
    No. 12-7300 (JLL), 2013 WL 1760557 (D.N.J. Apr. 24, 2013)................................13

*Lanier v. Am. Bd. Of Endodontics*,
    843 F.2d 901 (6th Cir. 1988) ................................................................4

*Maioran v. Calabrese*,
    135 A. 69 (1926) ................................................................23

*McKerchie v. Wisconsin Cent. Ltd.*,
    No. 2:14-CV-101, 2014 WL 4854434 (W.D. Mich. Sept. 29, 2014) ........................8

*Mercedes-Benz USA, LLC v. ATX Grp., Inc.*,
    No. 08-3529 (WHW), 2009 WL 2255727 (D.N.J. July 27, 2009) ............................10, 13, 14

*Minger v. Green*,
    239 F.3d 793 (6th Cir. 2001) ................................................................21

*MK Strategies, LLC, v. Ann Taylor Stores Corp.*,
    567 F. Supp. 2d 729 (D.N.J. 2008) ................................................................25

*N.J. Dep't of Envir. Prot. v. Occidental Chem. Corp.*,
    No. A-0067-11T2, 2012 WL 1392597 (N.J. Super. Ct. App. Div. Apr. 24,
    2012) ................................................................13

*Neogen Corp. v. Neo Gen Screening, Inc.*,
    282 F.3d 883 (6th Cir. 2002) ................................................................3

*Newco Holdings, L.L.C. v. Letco Med., Inc.*,
　　No. 05-CV-71658-DT, 2005 WL 2739320 (E.D. Mich. Oct. 24, 2005) ..................................8

*Pentech Pharms., Inc. v. Par Pharm., Inc.*,
　　No. 04-C-3149, 2004 WL 2390088 (N.D. Ill. Oct. 21, 2004) ..................................19

*PKWare, Inc. v. Meade*,
　　79 F. Supp. 2d 1007 (E.D. Wis. 2000)..................................6, 7

*Q Capital Corp. v. Wilmington Trust Co.*,
　　No. A-2780-05T5, 2007 WL 93231 (N.J. Super. Ct. App. Div. Jan. 12, 2007) ..................24

*Ray Haluch Gravel Co. v. Central Pension Fund of Int'l Union of Operating*
　　*Engineers & Participating Employers*,
　　134 S. Ct. 773 (2014)..................................20

*Rinks v. Hocking*,
　　No. 10-cv-1102, 2011 WL 691242 (W.D. Mich. Feb. 16, 2011) ..................................8

*Russell-Stanley Corp. v. Plant Indus., Inc.*,
　　595 A.2d 534, 550 (N.J. Super. Ct. Ch. Div. 1991) ..................................25

*Saltiel v. GSI Consultants, Inc.*,
　　788 A.2d 268, 269 (N.J. 2002)..................................19

*Seidenberg v. Summit Bank*,
　　791 A.2d 1068 (N.J. Super. Ct. App. Div. 2002)..................................14, 15

*Senft v. Fireman's Fund Ins. Co.*,
　　No. 14-07805, 2015 WL 2235098 (D.N.J. May 12, 2015)..................................17

*Serras v. First Tennessee Bank Nat. Ass'n*,
　　875 F.2d 1212 (6th Cir. 1989) ..................................3

*Shared Med. Equip. Grp., LLC v. Simi Valley Hosp. & Healthcare Servs.*,
　　3 F. Supp. 3d 735 (W.D. Wis. 2014) ..................................6

*Skyhawke Techs., LLC v. DECA Int'l Corp.*,
　　No. 3:10CV708-TSL-MTP, 2011 WL 1806511 (S.D. Miss. May 11, 2011)..................................9

*Sports Auth. Michigan, Inc. v. Justballs, Inc.*,
　　97 F. Supp. 2d 806 (E.D. Mich. 2000)..................................4, 5

*State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l,*
　　*Inc.*,
　　904 A.2d 775 (N.J. Super. Ct. App. Div. 2006)..................................21

*Steelcase, Inc. v Mar-Mol Co.*,
  210 F. Supp. 2d 920 (W.D. Mich. 2002) ................................................................6, 7, 8, 10

*Sunset Fin. Res., Inc. v. Redevelopment Group V, LLC*,
  No. 05-2914, 2006 WL 3675384 (D.N.J. Dec. 12, 2006).................................................17, 18

*Syndia Corp. v. Lemelson Med. & Research Found.*,
  1:99-cv-08241, Dkt. #40 (N.D. Ill. June 6, 2000)............................................................18, 19

*Syndia Corp. v. Lemelson Med. Ed. & Research Foundation*,
  165 F. Supp. 2d 7289 (N.D. Ill. 2001) ..................................................................................19

*Touristic Enterprises Co. v. Trane Inc.*,
  No. 09-02732 (SRC), 2009 WL 3818087 (D.N.J. Nov. 13, 2009) .........................................24

*Vibra-Tech Engineers, Inc. v. Kavalek*,
  No. 08-2646-NLH, 2011 WL 111417 (D.N.J. Jan. 13, 2011) ................................................17

*W. Jersey Title & Guar. Co. v. Indus. Trust Co.*,
  141 A.2d 782 (N.J. 1958)......................................................................................................24

*Wilson v. Amerada Hess Corp.*,
  773 A.2d 1121 (N.J. 2001)....................................................................................................15

*Winslow v. Corporate Express, Inc.*,
  834 A.2d 1037, 1047 (N.J. Super. Ct. App. Div. 2003) ........................................................25

## STATUTES

26 U.S.C. § 1404(a) .................................................................................................................7, 8

28 U.S.C. § 1391(b)(2) ...............................................................................................................6

## OTHER AUTHORITIES

Local Rule 7.2(d) ........................................................................................................................1

Fed. R. Civ. P. 8(a)(2) ...............................................................................................................11

Fed. R. Civ. P. 8(d)(2) ...............................................................................................................25

Fed. R. Civ. P. 9(b) ...................................................................................................................21

Fed. R. Civ. P. 12(b)(6)..............................................................................................................11

Plaintiffs Tim A. Fischell, M.D., Robert E. Fischell, Sc. D., and David R. Fischell, Ph. D. ("Plaintiffs" or "the Fischells") respectfully file the following Response to Cordis Corporation's ("Cordis") Motion to Dismiss or, in the Alternative, to Transfer (the "Motion").   The Fischells request oral argument pursuant to Local Rule 7.2(d).

## I.      INTRODUCTION

The Fischells are pioneering inventors of vascular stents—metal or composite mesh tubes that are inserted into blood vessels to prevent or counteract blockages and blood flow restrictions.  As a result of their vision, drive, and investment, the Fischells are the named inventors on more than forty United States patents for vascular stents and stent delivery systems.

In 1999, the Fischells entered an exclusive license agreement (the "1999 Agreement") with Johnson & Johnson subsidiary Cordis and entrusted their entire stent technology patent estate to Cordis's care.  In 2004, Cordis sublicensed the Fischells' patents to Abbott Laboratories ("Abbott")—formerly Guidant Corporation ("Guidant")—in exchange for access to the ability to sell stents mounted on Abbott's balloon catheter technology.  These stents have been enormously successful products for Cordis, generating likely in excess of $10 billion in revenue since 2004. Until recently, the relationship seemed to be mutually beneficial.  Cordis and Abbott developed, marketed, and sold stents utilizing the Fischells' patents and Cordis paid the Fischells royalties for both Cordis's and Abbott's sales of these "Royalty Bearing"[1] stents.

Unfortunately for the Fischells, while both Abbott and Cordis have earned billions of dollars from their 2004 sublicense agreement, the Fischells are no longer being paid any royalties for Abbott's sales of Royalty Bearing stents.  In 2012, Abbott ceased paying Cordis royalties ultimately owed to the Fischells for Abbott's sales based on Abbott's interpretation of a since-

---

[1] As defined in the 1999 Agreement.  (*See* First Amended Complaint ("FAC") Ex. A at ¶¶ 1.2, 1.11, 2.2, 2.13.)

vacated portion of a Delaware District Court decision issued in an infringement suit between Cordis and Boston Scientific involving a limited subset of the Fischells' patents.

Cordis, while admitting Abbott's breach of the sublicense, also has refused to pay the Fischells royalties for Abbott's sales or compel Abbott to pay, even though nothing in the 1999 Agreement conditions Cordis's obligation to the Fischells on Cordis first receiving a royalty payment from Abbott.  Cordis seeks nothing less than to impermissibly shift the risk of sublicensing to the Fischells, rewrite the 1999 Agreement, and deny the Fischells the benefit of their bargain.  In addition, during the course of the payment dispute, the Fischells learned for the first time that Cordis materially misrepresented the terms of the Abbott sublicense to them in 2004 in order to induce the Fischells to waive their right to $25 million-plus in royalties for Guidant's pre-2004 sales of Royalty Bearing stents. These facts led to the Fischells' fraud claim.

Now, even though Cordis expressly entered a contract with Kalamazoo resident Tim Fischell, paid him millions of dollars in royalties in Michigan, caused him further millions of dollars of damages in this state, and has sold millions of dollars of Royalty Bearing stents in this state pursuant to the 1999 Agreement that is squarely at issue in this case, Cordis wrongly asserts that the Fischells cannot state claims for relief at all, let alone bring claims in this Court.

Cordis is wrong on all counts. Jurisdiction and venue are proper in this Court based on Cordis's commercial relationship with Tim Fischell and sales of Royalty Bearing stents in this District. Nor can Cordis overcome the "strong presumption" in favor of Plaintiffs' choice of this forum to justify transfer to the District of New Jersey solely for the convenience of Cordis and its parent Johnson & Johnson.  Moreover, as set forth below, the Fischells have pled valid claims for relief in their First Amended Complaint.  The Court should deny Cordis's Motion and order this case to proceed in this Court.

## II.     CORDIS IS SUBJECT TO PERSONAL JURISDICTION IN THIS COURT

Cordis is subject to personal jurisdiction in this Court. The facts pled in the First Amended Complaint demonstrate that Cordis has engaged in a contractual relationship with Plaintiff Tim Fischell in this District since 1999; that Cordis maintains a deliberate, systematic business relationship with this District; and that the Fischells' claims are related to their contract with Cordis and Cordis's business activities in this District—namely, its sales of Royalty Bearing stents. These facts amply satisfy the jurisdictional requirements of Michigan's long arm statute and due process and should compel the Court to deny Cordis's Motion.

### A.     Legal Standard

When jurisdiction is challenged on a motion to dismiss, absent an evidentiary hearing, the "[p]laintiff's burden . . . is merely that of making a *prima facie* showing that personal jurisdiction exists. If plaintiff meets that burden the motion to dismiss should be denied, notwithstanding any controverting presentation by the moving party." *Evans Tempcon, Inc. v. Index Indus., Inc.*, 778 F. Supp. 371, 374 (W.D. Mich. 1990) (internal quotations omitted). "If the court rules on written submissions alone . . . it must consider the pleadings and affidavits in the light most favorable to the plaintiff."[2] *Id.* at 373–74.

"A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002) (citation omitted). "Under Michigan's long-arm statute, the state's

---

[2] If the Court remains undecided on the merits of personal jurisdiction, it should order limited jurisdictional discovery regarding Cordis's contacts with Michigan. This Court has discretion to do so and such discovery will make short work of Cordis's specious jurisdictional challenge. *See Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1215 (6th Cir. 1989). Alternatively, the Court should grant the Fischells leave to re-plead their claims.

jurisdiction extends to the limits imposed by federal constitutional Due Process requirements, and thus, the two questions become one." *Sports Auth. Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 810 (E.D. Mich. 2000); *Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997). There are three due process criteria for personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014).

**B.    This Court Has Personal Jurisdiction Over Cordis Because Plaintiffs' Claims Arise Out Of Cordis's Commercial Activities in Michigan**

This Court has personal jurisdiction over Cordis because Cordis "purposely availed" itself of the privilege of conducting business or causing consequences in Michigan and this controversy "is related to [the defendant's] forum-related activities." *Justballs*, 97 F. Supp. 2d at 811, 815. Cordis entered into the 1999 Agreement with Michigan resident Tim Fischell,[3] made royalty payments and sent royalty statements to him in this state, caused tens of millions of dollars in damages to Tim Fischell alone by breaching the 1999 Agreement, and continuously has sold Royalty Bearing products in this District that Cordis only may sell pursuant to the terms of the 1999 Agreement. (*See* FAC ¶¶ 15, 27, 31, 34, 45; T. Fischell Decl. (Ex. A) ¶¶ 5–9, 11.) These facts rebut any assertion that Cordis's activities in this state are merely "a passive

---

[3] In *Lanier v. Am. Bd. of Endodontics*—which Cordis repeatedly cites with approval—the Sixth Circuit reversed the district court and held that the defendant's correspondence to the plaintiff in Michigan aimed at establishing a contractual relationship was sufficient to establish personal jurisdiction for a discrimination claim.   843 F.2d 901, 903–06 (6th Cir. 1988).   Cordis's Michigan contacts far exceed those that established personal jurisdiction in *Lanier*.   They indisputably have "had an in-state effect" and provide ample bases for personal jurisdiction in this case. *Aug. v. Manley Toys, Ltd.*, No. 13-13894, 2014 WL 5847627, at *4 (E.D. Mich. 2014).

availment of Michigan opportunities" and confirm that Cordis maintains a deliberate, systematic business relationship with this jurisdiction. *Justballs*, 97 F. Supp. 2d at 811.  In other words, Cordis's contacts in Michigan are anything but "random,' "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Cordis also cannot rebut the inference that this Court's exercise of jurisdiction is reasonable.  *Justballs*, 97 F. Supp. 2d at 815.[4]  Although Cordis protests that litigating in this Court is burdensome, Cordis's business presence in the state and the fact that it is a near-billion dollar corporation confirms these objections are a pretext.  Next, Michigan clearly has a strong interest in adjudicating the rights of one of its citizens who has incurred substantial damages by Cordis's breach of contract, deceit, and other wrongful acts, and Plaintiffs have a strong interest in having their case adjudicated in their chosen forum.  Finally, Cordis cannot demonstrate that litigation in this jurisdiction would be inefficient or otherwise contradict fundamental substantive social policies.  Here, as in *Justballs*, none of these factors allow Cordis to rebut the inference that jurisdiction in Michigan is reasonable.  *Id*.  This Court has personal jurisdiction over Cordis.

### III.    VENUE IS PROPER IN THIS COURT AND CORDIS CANNOT MEET ITS HEAVY BURDEN TO JUSTIFY TRANSFERRING THIS ACTION TO NEW JERSEY

### A.    Venue Is Proper in This Court Because a Substantial Portion of the Events Giving Rise to This Action Occurred in This Jurisdiction

Venue is proper in this Court because, among other things, Cordis contracted with Tim Fischell fully knowing he lived and worked in Kalamazoo, Michigan; because Cordis conducted business in this District related to the 1999 Agreement; and because millions of dollars in

---

[4] The "reasonableness" factors include the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).

damages resulting from Cordis's breach of contract manifested in this District.  Cordis's tepid argument that venue is improper in this District lacks merit.

A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  28 U.S.C. § 1391(b)(2).  "In defining 'substantial part,' only a substantial connection to the events in Plaintiff's claim is needed for there to be venue." *Kelly Servs. v. Eidnes*, 530 F. Supp. 2d 940, 948–49 (E.D. Mich. 2008).  A "substantial connection is sufficient for venue even if a greater part of the events occurred in another venue." *Id.* (citation omitted). Put simply, "venue is proper in ***any*** district having a substantial connection with the events giving rise to the claim." *Steelcase, Inc. v Mar-Mol Co.*, 210 F. Supp. 2d 920, 937 (W.D. Mich. 2002) (emphasis added).

In cases involving breach of contract, the payment or non-payment of money pursuant to the contract at issue provides a basis for venue in a district where the payments were to occur. *See PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1016 (E.D. Wis. 2000) (venue proper in district where defendant failed to pay plaintiff); *Shared Med. Equip. Grp., LLC v. Simi Valley Hosp. & Healthcare Servs.*, 3 F. Supp. 3d 735, 746 (W.D. Wis. 2014) ("[Plaintiff's] breach of contract claim arises from Simi Valley's failure to send an $80,000 payment to Shared Medical in this district.  This makes venue in this district proper."); *D'Ancona & Pflaum LLC v. M2 Software, Inc.*, No. 00 C 7150, 2001 WL 873021, at *1 (N.D. Ill. Aug. 2, 2001) (same).

Here, Cordis has failed to pay royalties due under the 1999 Agreement to Plaintiff Tim Fischell and caused him financial harm in this District.  (*See* FAC Ex. A at 1 (identifying plaintiff "Tim A. Fischell of Kalamazoo, Michigan" as a party to 1999 Agreement); FAC ¶¶ 39, 60, 68, 104 (pleading claims for damages).)  Moreover, the 1999 Agreement required Cordis to issue royalty checks made out to Tim Fischell, and Cordis subsequently paid royalties directly to

6

Tim Fischell via checks delivered to his home in Kalamazoo, Michigan.  (FAC Ex. A ¶ 2.1; T. Fischell Decl. ¶ 7.)  Finally, the 1999 Agreement required Cordis to "render to the FISCHELLS a written report setting forth the amount of royalty accrued."  (FAC Ex. A ¶ 2.5.)  Cordis has continuously delivered these royalty payment reports to Tim Fischell in this District via U.S. Mail and e-mail.  (T. Fischell Decl. ¶ 8.)  Taken together, these facts are unassailable, and venue is proper in this Court.  *PKWare,* 79 F. Supp. 2d at 1016.

## B. Cordis Cannot Meet its Heavy Burden to Justify Transferring This Action to Cordis's Preferred Venue in New Jersey

This Court should not grant Cordis's plea to transfer this case to Cordis's preferred forum in New Jersey because Cordis cannot carry its heavy burden to overcome Plaintiffs' choice of a proper forum or even show that a different venue would be more convenient for any person or entity other than Cordis and its corporate parent Johnson & Johnson.

### 1. Legal Standard

Under 26 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought."  This standard "leaves much to the broad discretion of the trial court."  *Evans Tempcon*, 778 F. Supp. at 377 (citations omitted).  But, "the moving party bears the burden of proving why a court should transfer the action."  *Steelcase*, 210 F. Supp. 2d at 937 (citations omitted).  "This burden is a heavy one and requires the moving party to show that the balance of factors weighs strongly in favor of transfer."  *Id.* (citations omitted).  "[A] plaintiff's choice of forum is entitled to substantial consideration in balancing the § 1404(a) factors and [t]his is especially true where the plaintiff also resides in the chosen forum."  *Id.* at 720 (citations omitted).  Other factors the Court must consider are:

> (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the

> availability of process to compel attendance of unwilling witnesses, (5) the cost of obtaining willing witnesses, (6) the practical problems associated with trying the case most expeditiously and inexpensively, and (7) the interests of justice.

*McKerchie v. Wisconsin Cent. Ltd.*, No. 2:14-CV-101, 2014 WL 4854434, at *2 (W.D. Mich. Sept. 29, 2014) (citations omitted).   Finally, additional public interest factors typically considered by Sixth Circuit district courts include: "(i) the enforceability of the judgment; (ii) practical considerations affecting trial management; (iii) docket congestion; (iv) the local interest in having deciding local controversies at home; (v) the public policies of the fora; [and] (vi) the familiarity of the trial judge with the particular state law."  *Cincinnati Ins. Co. v. O'Leary Paint Co.*, 676 F. Supp. 2d 623, 637 (W.D. Mich. 2009) (citations omitted).

### 2.  Transfer for Cordis's convenience does not outweigh the strong presumption in favor of the Fischells' chosen forum

Here, ***none*** of the 1404(a) factors are so in Cordis's favor as to outweigh the strong presumption in favor of the Fischells' choice of forum, and Cordis's own authorities are fatal to its argument seeking transfer.

"In general, a plaintiff's choice of forum is entitled to substantial consideration in balancing the § 1404(a) factors," and "[t]his is especially true where the plaintiff also resides in the chosen forum."  *Steelcase*, 210 F. Supp. 2d at 938.  "This is sometimes expressed as a 'strong presumption' in favor of plaintiff's selected forum."  *Rinks v. Hocking*, No. 10-cv-1102, 2011 WL 691242, at *2 (W.D. Mich. Feb. 16, 2011) (denying transfer motion).  Here, there is no question that venue is proper in this District, that the Fischells chose this forum, and that Plaintiff Tim Fischell resides in this District.  None of the factors Cordis relies on—and that Plaintiffs refute below in any event—can overcome the "strong presumption" against transfer.

"The relative size and resources of the parties also is a consideration in assessing inconvenience to the parties" and weighs against Cordis here.  *Newco Holdings, L.L.C. v. Letco*

*Med., Inc.*, No. 05-CV-71658-DT, 2005 WL 2739320, at *3 (E.D. Mich. Oct. 24, 2005) (citations omitted).  As a subsidiary of Johnson & Johnson, which has a market capitalization of approximately $275 billion (NYSE: JNJ), Cordis has sufficient resources to defend this lawsuit no matter its locale. The Fischells' resources pale in comparison to Defendant's, and their choice of forum should not be disturbed to convenience Cordis and Johnson & Johnson.

The Court should likewise reject Cordis's contention that New Jersey is "more convenient for nonparty witnesses."  (Def's Br. at 10.)  As Cordis admits, its two named purported "nonparty" witnesses are in fact current employees of Cordis's controlling parent company Johnson & Johnson who either were employed by Cordis when they negotiated contractual agreements with the Fischells or who acted expressly on Cordis's behalf in its contractual dealings with the Fischells.  (*See, e.g.*, FAC Ex. B (correspondence and executed agreement identifying Susan Morano as a ***Cordis*** Vice President).)  Neither Morano nor Colletti are truly "nonparties,"[5] and even if they were, their contact with this District (and resulting "inconvenience") would likely be limited to a day or two of testimony controlled by and on behalf of Cordis when and if this case proceeds to trial.

Cordis also failed to inform the Court that the one actual, significant nonparty witness in this case—Abbott Laboratories—is headquartered in North Chicago, Illinois, approximately 118

---

[5] *Dillon v. Watson Bowman Acme Corp.*, the case that Cordis cites for the proposition that officers of parent companies should be treated as nonparty witnesses, has never been cited for the principle and does not appear to involve a witness who was employed by or acted on behalf of the defendant.  *See* 2003 WL 22454024, at *2 (N.D. Ill. Oct. 27, 2003); *compare Skyhawke Techs., LLC v. DECA Int'l Corp.*, No. 3:10CV708-TSL-MTP, 2011 WL 1806511, at *3 (S.D. Miss. May 11, 2011) (denying motion to transfer and finding witnesses employed by defendant's parent company were "likely party witnesses not third-party witnesses").

miles from the courthouse in Kalamazoo.[6]  If any Abbott personnel or counsel may appear before the Court, Michigan is more convenient to Illinois than New Jersey, and this convenience factor thus also weighs ***against*** transfer.  *See Steelcase*, 210 F. Supp. 2d at 939–41 (comparing distances to potential venues and denying transfer).[7]

Although Cordis argues that "the Western District of Michigan has no unique local interest in this case that New Jersey lacks," (Def's Br. at 11), that factor is at best a draw, and Cordis cannot argue that this Court lacks an interest in adjudicating a multi-million dollar case brought by a resident of this District.

Finally, "[a] forum's familiarity with the governing law . . . is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved."  *Cincinnati*, 676 F. Supp. 2d at 638–39.  Here, Cordis has not asserted any complex issues of New Jersey law exist, let alone shown why this "least important" consideration outweighs the "strong presumption" in favor of Plaintiffs' choice of forum.  *See also Mercedes-Benz USA, LLC v. ATX Grp., Inc.*, No. 08-3529 (WHW), 2009 WL 2255727, at *5 (D.N.J. July 27, 2009) (denying transfer and stating "that a court may have to apply the law of another state is insufficient to support granting a motion to transfer").

In sum, none of the salient 1404(a) factors actually weigh in favor of transferring this action to Cordis's parent's home court in New Jersey, let alone allow Cordis to satisfy its "heavy

---

[6] Cordis focuses on the fact that Abbott's vascular division is "located in Santa Clara, California."  (Def's Br. at 10.)  Santa Clara still is hundreds of miles closer to Kalamazoo than to anywhere in New Jersey.

[7] Cordis concedes that the location of documentary evidence is not "'particularly significant given the technological age in which we live.'" (Def's Br. at 11 (citing *Cincinnati*, 676 F. Supp. 2d. at 635).)  That factor is neutral at best.  *See Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000).

burden" to overcome the "strong presumption" in favor of the Fischells' choice of forum in this Court. Cordis's motion to transfer should be denied.

## IV. THE FISCHELLS STATE CLAIMS FOR RELIEF IN EACH COUNT OF THE FIRST AMENDED COMPLAINT

### A. Count I (Breach of Contract)

#### 1. The First Amended Complaint identifies the contract and the provisions Cordis breached

Cordis wrongly asserts that the Fischells must identify the specific contractual provisions that Cordis breached at this early stage of the litigation. (Def's Br. at 12.) There is no such requirement. In any event, the First Amended Complaint *does* identify the sublicensing and other provisions of the 1999 Agreement that Cordis breached, and attaches the entire 1999 Agreement as an Exhibit. (FAC ¶¶ 15–16, 18–19, 64, 66; FAC Ex. A.) Cordis's argument is frivolous and the Court should pay it no heed.

Under federal notice pleading standards, a complaint need only contain "a short and plain statement" of the plaintiff's claim. Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012).

Under New Jersey law, a breach of contract claim consists of three elements: (1) the existence of a valid contract; (2) a breach of that contract; and (3) damages. *See, e.g.*, *AT&T Credit Corp. v. Zurich Data Corp.*, 37 F. Supp. 2d 367, 370 (D.N.J. 1999). None of these elements need be pled with particularity *See, e.g.*, *Decosta v. English*, No. 11-2651 (MAH), 2012 WL 528760, at *6 (D.N.J. Feb. 16, 2012) ("[A]t this stage of litigation, the Federal Rules do not require the Plaintiff to include the contract with the complaint, or allege specific provisions, or specify damages that were incurred. Rule 8 requires only that the complaint

provide fair notice of what the plaintiff's claim is and the grounds upon which it rests.") (quotations omitted).[8]

The Fischells' First Amended Complaint not only attaches and incorporates the 1999 Agreement by reference, it also specifically identifies contractual provisions Cordis breached. (*See, e.g.*, FAC Ex. A; FAC ¶¶ 15–16, 18–19 (identifying contractual obligations and citing 1999 Agreement); 48, 50–53, 64, 66 (identifying breaches of same).)  Fatal to Cordis's argument, Cordis repeatedly cites and discusses in its own Motion these same specific contract provisions and allegations of breach.  (*See, e.g.*, Def's Br. at 13–15, 17, 21, 22.)  Cordis has received "fair notice," and the Fischells have pled a valid breach of contract claim.

### 2.    The First Amended Complaint states a valid claim for breach of contract

Cordis also incorrectly asserts that the Fischells have failed to state a claim because the 1999 Agreement does not obligate Cordis to pay the Fischells royalties for Abbott's sales of Royalty Bearing stents or sue Abbott for failing to pay the Fischells royalties.  (Def's Br. at 13–15.)  Of course Cordis is wrong.  Paragraph 2.13 of the 1999 Agreement permitted Cordis to sublicense the Fischells' patents to Abbott only "***as long as the appropriate one (1%) ROYALTY is paid to the FISCHELLS in accordance with the terms of the AGREEMENT***."  In order to give force and effect to this "as long as" provision—the only express condition[9] on Cordis's right to enter sublicense agreements for its benefit—the Fischells allege that Cordis was obligated to ***either*** pay royalties for Abbott's sales ***or*** compel Abbott to pay.  (FAC ¶ 66(a)–(c).)

---

[8] The only case Cordis cites to support a novel heightened pleading standard for breach of contract does not stand for that proposition all.  (Def's Br. at 12 (citing *Eprotec Pres., Inc. v. Engineered Materials, Inc.*, No. 10-5097, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011).)  In *Eprotec*, the plaintiffs' allegations were so vague that the court could not even discern which contracts they were seeking to enforce, and even then, the court did not dismiss the plaintiffs' breach of contract claim.  *See id.* (ordering arbitration).

[9] Of course Cordis also has implied contractual and fiduciary obligations to the Fischells under the 1999 Agreement.  (FAC ¶¶ 70-88 (identifying and pleading breaches of same).)

Cordis tries to write out Paragraph 2.13 by recasting Abbott's sales of Royalty Bearing stents as "unauthorized" or "unlicensed" (Def's Br. at 14), even though Cordis has not terminated the Abbott sublicense and Cordis has earned billions of dollars from that sublicense. Cordis cites no authority to remove Abbott's sales from the scope of the 1999 Agreement and the Cordis/Abbott sublicense.  And Cordis's interpretation of the 1999 Agreement—that it may freely enjoy all of the benefits of its sublicense with Abbott even if the Fischells are not paid royalties for Abbott's sales—impermissibly renders the "as long as" provision of Paragraph 2.13 a nullity.[10]  Cordis's position is contrary to black letter law in New Jersey (and everywhere else) and the Court should reject it. *N.J. Dep't of Envir. Prot. v. Occidental Chem. Corp.*, No. A-0067-11T2, 2012 WL 1392597, at *17 (N.J. Super. Ct. App. Div. Apr. 24, 2012); *J.L. Davis & Associates v. Heidler*, 622 A.2d 923, 927 (N.J. Super. Ct. App. Div. 1993) (rejecting interpretation of a contractual provision that "would nullify its very terms and render the provision useless").

In any event, Cordis's arguments regarding the interpretation of the 1999 Agreement are improper in a motion to dismiss.  *Mercedes-Benz*, 2009 WL 2255727, at *8 ("[A]t this stage, plaintiff's reasonable interpretation of the contract is sufficient to overcome defendant's motion to dismiss and to permit this case to proceed to discovery on the breach of contract claims.") Even if the contractual language is ambiguous—and it is not—the facial ambiguity of a contract creates a factual question that precludes dismissal.  *See, e.g.*, *Ajuba Int'l, LLC v. Saharia*, 871 F. Supp. 2d 671, 690 (E.D. Mich. 2012) (denying motion to dismiss); *Klein v. Budget Rent a Car*

---

[10] Cordis's assertion that ¶ 2.12 of the 1999 Agreement gives Cordis discretion not to sue Abbott *for infringement* misconstrues the FAC and is irrelevant.  (Def's Br. at 13.)   The Fischells do not allege Cordis was obligated to sue Abbott for infringement; rather Cordis was obligated to pay or compel Abbott to pay *the royalties* Cordis obligated itself to pay when it sublicensed the Fischells' patents to Abbott pursuant to ¶ 2.13.   Cordis's broad reading of ¶ 2.12 would effectively and impermissibly vitiate Cordis's obligations under ¶ 2.13.

*Sys., Inc.*, No. 12-7300 (JLL), 2013 WL 1760557, at *6 (D.N.J. Apr. 24, 2013) (denying motion to dismiss breach of contract and breach of implied covenant of good faith claims).[11] The Fischells have sufficiently alleged breach, and the Court should deny Cordis's Motion.

## B. Count II (Breach of Implied Covenant of Good Faith)

### 1. The First Amended Complaint adequately pleads improper motive

Cordis argues that the Fischells' claim for breach of the implied covenant of good faith fails because the Fischells supposedly failed to plead that Cordis acted with an improper motive. (Def's Br. at 15–16.) Cordis misstates the pleading standard for this claim.

An implied covenant of good faith exists in every contract governed by New Jersey law. *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 169–70 (3d Cir. 2001). A party may assert a claim for breach of this implied covenant to seek redress for the bad faith performance of an agreement even when the defendant has not breached any express term, or to challenge a party's exercise of discretion granted by the contract. *See, e.g.*, *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1076–78 (N.J. Super. Ct. App. Div. 2002). While a party asserting this claim must plead bad motive or intention, "at the pleading stage all that is required is an allegation of bad faith." *Alin v. Am. Honda Motor Co., Inc.*, No. 08-4825 (KSH), 2010 WL 1372308, at *11 (D.N.J. Mar. 31, 2010) (denying motion to dismiss).

Cordis's misguided argument first focuses on one paragraph of the First Amended Complaint, ignores the remainder of the Fischells' allegations, and concludes that the Fischells have failed to plead a bad faith motive for their claim. (Def's Br. at 16.) Cordis is incorrect

---

[11] Cordis's argument regarding its audit obligations also is improper at this stage. *See* 2009 WL 2255727, at *8; 871 F. Supp. 2d at 690. The Fischells have pled that the 1999 Agreement obligated Cordis to keep accurate record of sales of Royalty Bearing products and provide the Fischells with reports of such sales. (FAC ¶ 19.) The 1999 Agreement imposes precisely that obligation on Cordis for "sales with respect to which a royalty is payable according to this Agreement" (FAC Ex. A ¶ 2.5), and does not limit this obligation to Cordis's own sales.

because the Fischells clearly alleged Cordis acted in bad faith. (FAC ¶ 76 ("Cordis has acted in bad faith by . . . .").)[12] No more is required to sustain the Fischells' claim. *Alin*, 2010 WL 1372308, at *11; *see also Seidenberg*, 791 A.2d at 1079–80 (reversing dismissal because questions of bad faith could not be resolved without a full opportunity for discovery).[13] Cordis also creates a straw-man motive of "increased sales" and then argues that this motive does not meet the standard for bad faith under New Jersey law. (Def's Br. at 17.) But the Fischells nowhere allege that a "motive of increased sales" is, by itself, improper. Instead, among other things, the Fischells allege—and Cordis does not attempt to rebut—that Cordis lied about its obligation to pay the Fischells $25 million-plus in pre-2004 patent royalties. Cordis thus acted in bad faith so that Cordis could ***further wrongly enrich itself*** from its "increased sales" by ***also withholding*** the royalty payments due to the Fischells. (FAC ¶¶ 21–31, 54–60, 75–76.) This was manifestly bad faith conduct that sustains the Fischells' claim. *See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395–97 (N.J. 2005) ("[A] plaintiff may get relief [for breach of the implied covenant of good faith] if it relies to its detriment on a

---

[12] The Fischells have pled other bad faith actions, including that Cordis representative Paul Coletti: (1) declined to provide a copy of the Cordis/Abbott sublicense to the Fischells despite repeated requests to do so; (2) misled the Fischells by providing them a bogus "excerpt" of the license; and (3) misrepresented the terms of Cordis's agreement with Guidant/Abbott. (FAC ¶¶ 21–31, 54–60; FAC Ex. C.) These allegations also support the Fischells' claim. (FAC ¶ 70.)

[13] Cordis's purported authorities to the contrary are inapposite. In *Wilson v. Amerada Hess Corp.*, the New Jersey Supreme Court reversed summary judgment against the plaintiff because the trial court had erred by dismissing the implied covenant of good faith claim without allowing sufficient discovery. 773 A.2d 1121, 1129–31 (N.J. 2001). *Boardwalk Regency Corp. v. Unite Here Local 54* granted summary judgment based on an arbitrator's binding factual finding of no bad faith. No. 08-cv-0016 (JBS), 2009 WL 540675, at *8–9 (D.N.J. Mar. 3, 2009). Even in *Hassler v. Sovereign Bank*—a case about a bank's overdraft procedures that were fully disclosed in the parties' agreement—the court only dismissed the claim because the Complaint did not make ***any*** factual allegations that plausibly asserted the defendant acted in bad faith. 644 F. Supp. 2d 509, 518–19 (D.N.J. 2009). Here the Fischells repeatedly detailed Cordis's bad faith, deceit, and malicious conduct. (FAC ¶¶ 24–25, 28–29, 54–55, 58–60, 75–76, 86, 93, 109.)

defendant's intentional misleading assertions."). The Fischells have stated a valid claim for breach of the implied covenant.

### 2. The First Amended Complaint fully alleges that Cordis's actions deprived the Fischells of the benefit of their bargain

Cordis's next argument fails for three reasons. First, Cordis repeatedly expounds on what the Fischells "must" have contemplated when signing the contract to support its interpretation of the 1999 Agreement. (Def's Br. at 17.) But the parties' contractual contemplations are questions of fact that must be resolved in the Fischells' favor on a motion to dismiss. *Ajuba*, 871 F. Supp. 2d at 689–90.

Second, Cordis's repeated invocation of its "unlimited discretion" completely disregards the purpose of the implied covenant of good faith, which exists specifically to ensure that ***discretionary*** contractual rights and obligations are performed ***in good faith***. *Emerson Radio*, 253 F.3d at 169–70. The Fischells have not asserted that Cordis's discretion should be "erased." But they have pled that Cordis was obliged to exercise its discretion in good faith and alleged facts showing Cordis did not do so. (FAC ¶¶ 24–25, 28–29, 54–55, 58–60, 75–76, 86, 93, 109.)

Finally, Cordis's argument that enforcement of the implied covenant of good faith would "upend an established principle of patent law" is baseless. (Def's Br. at 18.)[14] Cordis cites no support for its proposition that patent assignment law releases an assignee from an obligation to act in good faith. Moreover, the Fischells agree that they could not bring an action to protect or enforce their patent rights against third-party infringers; Cordis had exclusive discretionary enforcement and sublicensing rights. But those facts undergird the purpose behind the implied covenant: to ensure that both parties receive their reasonable expectations and fruits of the

---

[14] Once again, Cordis impermissibly conflates its discretionary right to sue patent infringers under ¶ 2.12 with its obligations under ¶ 2.13 to pay royalties for its sublicensee's sales.

contract *when one party has enormous discretion*.[15]   *Emerson Radio*, 253 F.3d at 169–70.

Cordis asserts that its discretionary rights were not subject to the implied duty of good faith

because they were discretionary.  The Court should reject this unsupported circular argument.

**C.     Count III (Breach of Fiduciary Duties)**

> **1.     The First Amended Complaint properly alleges the existence of a fiduciary relationship between Cordis and the Fischells**

Cordis's argument that no fiduciary relationship exists is incorrect and cannot be

sustained in any event at this preliminary stage of the case and prior to discovery.

A fiduciary relationship arises between two parties when one party is under a duty to act

for or give advice for the benefit of another on matters within the scope of their relationship.

*E.g.*, *Senft v. Fireman's Fund Ins. Co.*, No. 14-07805, 2015 WL 2235098, at *4 (D.N.J. May 12,

2015) (citing *F.G. v. MacDonell*, 696 A.2d 697, 704 (N.J. 1997)).  The essence of the fiduciary

relationship is that one party places trust and confidence in another who is in a dominant or

superior position.  *Id.*  A violation of that trust constitutes a breach of fiduciary duty.  *Id.*

New Jersey law makes clear "that determining whether a fiduciary relationship exists

between two parties is a fact sensitive inquiry" that should not be decided on a motion to dismiss.

*Sunset Fin. Res., Inc. v. Redevelopment Group V, LLC*, No. 05-2914, 2006 WL 3675384, at *7

(D.N.J. Dec. 12, 2006) (declining to dismiss even where court could not identify any case

recognizing the fiduciary relationship pled); *see also Vibra-Tech Engineers, Inc. v. Kavalek*, No.

---

[15] Far from adopting the principle of unrestrained self-interest Cordis advances in its Motion (Def's Br. at 17), New Jersey has long imposed on patent licensees an affirmative good faith obligation to "exploit" the license for the benefit of the original licensor.  *See, e.g.*, *Fenning v. Am. Type Founders, Inc.*, 109 A.2d 689, 694 (N.J. 1954) (holding where licensor has placed its property solely within the control of the licensee, an implied obligation exists to work the property in good faith to produce royalty income for the licensor).

08-2646-NLH, 2011 WL 111417, at *5 (D.N.J. Jan. 13, 2011) (denying **summary judgment** and noting necessity for "extremely fact intensive inquiry").

The Fischells have pled sufficient facts to assert a fiduciary relationship exists.  Although fiduciary relationships may not normally arise in **ordinary** commercial business transactions, the First Amended Complaint contains many facts demonstrating that this was **not an ordinary** commercial business transaction.  The 1999 Agreement granted Cordis the exclusive right to own, use, and control the Fischells' patents as long as Cordis paid royalties.  (FAC ¶¶ 17, 81.) Cordis also received the right to license the Fischells' patents to whomever it chose, was required to keep "complete and accurate records of sales" for the benefit of the Fischells, and received the exclusive right to sue infringers of the Fischells' patents. (*Id.* at ¶¶ 17, 19, 81, 82.)  Given the broad discretionary powers granted Cordis and the fact-intensive inquiry that must be undertaken to adjudicate the existence of a fiduciary relationship, it would be improper to dismiss this claim at this early stage of the case.  *Sunset Fin. Res., Inc.*, 2006 WL 3675384, at *7.

Other courts have refused to dismiss allegations of a fiduciary relationship in the patent license context and under similar circumstances.  *See, e.g., Syndia Corp. v. Lemelson Med. & Research Found.*, 1:99-cv-08241, Dkt. #40, at 13–16 (N.D. Ill. June 6, 2000) (denying motion to dismiss) (Ex. B).  In *Syndia*, the plaintiff corporation actually ceded **fewer** rights to the defendant than the Fischells did to Cordis.  For example, the *Syndia* plaintiff retained the exclusive right to use and license patents in its portfolio, and only empowered the defendant to control and license the patents in limited circumstances.  *Id.* at 15. It also retained the right to initiate a patent infringement action so long as the defendant consented.  *Id.*  Still, noting the amount of control ceded by the *Syndia* plaintiff to the defendant, and that plaintiff reposed trust in the defendant not

to exercise its discretion in a manner that would harm it, the court found that the *Syndia* plaintiff had pled a facially plausible fiduciary relationship. *Id.*[16] So have the Fischells.

Nor is the lack of an express provision creating a fiduciary relationship in the 1999 Agreement in any way dispositive. The parties' conduct alone may give rise to a fiduciary relationship in the patent license context. *Pentech Pharms., Inc. v. Par Pharm., Inc.*, No. 04-C-3149, 2004 WL 2390088, at \*3–4 (N.D. Ill. Oct. 21, 2004) (denying motion to dismiss and ruling that "[p]lacing the alleged facts under the microscopic scrutiny necessary" to determine if a fiduciary relationship exists "would be inconsistent with Fed. R. Civ. P. 8 . . . ."). The Fischells have pled a facially valid fiduciary relationship, and the Court should allow their claim to proceed.

### 2. The economic loss doctrine does not bar the Fischells' claim for breach of fiduciary duties

Cordis's economic loss doctrine argument fails because there is no binding authority that New Jersey's economic loss doctrine bars a breach of fiduciary duty claim. Cordis's authorities in support of its argument for dismissal are inapposite or unpersuasive.

Cordis first attempts to rely on *Duquesne Light Co. v. Westinghouse Elec. Corp.,* but in that case the Third Circuit applied its interpretation of ***Pennsylvania's*** economic loss doctrine to a ***negligent misrepresentation*** claim. *See Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). And *Saltiel v. GSI Consultants, Inc.*, though a New Jersey case, did not discuss breach of fiduciary duties at all; it dealt only with whether corporate officers can be held personally liable for tortious conduct under a "***participation theory***" of liability. 788

---

[16] The court later entered summary judgment against plaintiff based on the specific terms of the license agreements at issue in that case. *See Syndia Corp. v. Lemelson Med. Ed. & Research Foundation*, 165 F. Supp. 2d 728, 738–39 (N.D. Ill. 2001). That subsequent ruling is of no moment here, on different agreements, and under a different legal standard.

A.2d 268, 269 (N.J. 2002).  Cordis's final authority, *Glenz v. RCI, LLC,* dismissed a breach of fiduciary claim arising out of *a time-share participation agreement* while citing no New Jersey authority and conceding that the "full scope of the economic loss doctrine remains perhaps an 'open question.'" No. 09-cv-378, 2010 WL 323327, at *5 (D.N.J. Jan. 20, 2010).  *Glenz*'s ruling regarding unsettled New Jersey law and dismissing a breach of fiduciary duty claim involving a completely different contractual arrangement does not apply here and does not bind this Court.[17]

Cordis has not cited any binding New Jersey authority that deals with fiduciary relationships in patent license agreements, let alone that obligates this Court to dismiss the Fischells' breach of fiduciary duties claim.  That fact, combined with the authorities above denying dismissal of such claims in the patent license context, should compel the Court to reject Cordis's entreaty to apply highly unsettled New Jersey law and dismiss the Fischells' claim here.

**D.       Count IV (Fraud and Fraudulent Concealment)**

**1.       The Fischells have pled the elements of fraud**

The Fischells have pled that Cordis made fraudulent misrepresentations to them with particularity sufficient to satisfy federal pleading requirements and New Jersey law.[18]  "To establish common-law fraud, a plaintiff must prove: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an

---

[17] New Jersey federal authority reinforces this point.  *See Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130, 144 (3d Cir. 2001), *abrogated on other grounds by Ray Haluch Gravel Co. v. Central Pension Fund of Int'l Union of Operating Engineers & Participating Employers*, 134 S. Ct. 773 (2014) (noting conflict between New Jersey state and federal courts interpreting economic loss doctrine had created a "morass"); *D&D Tech., Inc. v. Cytocore, Inc.*, No. 14-4217, 2014 WL 4367314, at *4 (D.N.J. Sept. 2, 2014) (noting other district courts' interpretations of New Jersey's economic loss doctrine  were not binding and declining to apply doctrine).

[18] The Fischells do not concede that New Jersey law applies to their fraud claim.  *See Diamond Computer Sys., Inc. v. SBC Commc'ns, Inc.*, 424 F. Supp. 2d 970, 978–80 (E.D. Mich. 2006) (in Michigan, tort claims are governed by the law of the forum unless a rational reason exists to displace it).  But Cordis's arguments fail even under the New Jersey law it asserts is controlling.

intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (2005) (quotations omitted). New Jersey law also requires that in pleading fraud, the "particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable" but that "[m]alice, intent, knowledge, and other condition of mind of a person may be alleged generally." *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 784 (N.J. Super. Ct. App. Div. 2006). The federal pleading requirements under Rule 9(b) that apply in this Court are effectively the same. *Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001).

The Fischells have specifically pled the particulars of Cordis's misrepresentation. The First Amended Complaint sets forth in detail that Cordis representative Paul Coletti told the Fischells that they would have to waive their contractual rights to pre-2004 patent royalties from Guidant in order to secure royalty payments from Guidant/Abbott going forward, omitting that Cordis and Guidant had actually agreed that Cordis would pay the pre-2004 royalties to the Fischells. Coletti made that fraudulent misrepresentation to the Fischells at least two times: first, via a phone call to Robert and Tim Fischell in Hawaii during January 24-28, 2004 (FAC ¶¶ 21–24, 82–84); and then in a February 22, 2004 email that enclosed sham contract language between Cordis and Guidant/Abbott (FAC ¶¶ 28, 85–86; FAC Ex. C).

Even Cordis admits that "the Fischells have alleged that a particular Cordis employee—Paul Coletti—told them at specific times and places that Cordis had waived rights to pre-2004 royalties." (Def's Br. at 22.) This—the misrepresented substance of the Cordis/Abbott agreement and its impact on the Fischells' rights and actions—is exactly the crux of the fraud claim, ***not*** whether Cordis had made the "best deal" on the Fischells' behalf, as Cordis

21

erroneously asserts in its Motion.   The Fischells have pled Cordis's fraudulent misrepresentations and omissions with particularity.

Likewise, the Fischells have set out sufficient facts to plead that Cordis's multiple misrepresentations were material and that they relied on Cordis's misrepresentations and suffered resulting damages.[19]   The Fischells repeatedly pled that they waived their contractual rights to pre-2004 royalties on Guidant's Royalty Bearing stents in reliance on Coletti's statements that they must waive their rights to those royalties in order for Guidant/Abbott to enter the sublicense with Cordis and "insur[e] a royalty stream under future products." (FAC Ex. C; FAC, ¶¶ 22, 23, 29, 87, 91.)

Cordis's argument that its misrepresentations were immaterial because it did not need the Fischells' consent to waive their rights to pre-2004 royalties is unavailing.  (Def's Br. at 22–23.) Cordis's post-hoc interpretation of the 1999 Agreement raises fact issues regarding the Fischells' contractual rights that may not be resolvable on summary judgment, let alone on a motion to dismiss.[20]   Not least, Cordis's argument begs the question why Cordis repeatedly misrepresented the terms of the Cordis/Abbott agreement and deceived the Fischells into waiving their rights to pre-2004 royalties if the Fischells did not have a right to those royalties anyway.   That question cannot be resolved now on the pleadings and the Court should reject Cordis's argument otherwise.   *See Gen. Ret. Sys. of City of Detroit v. UBS, AG*, 799 F. Supp. 2d 749, 760 (E.D.

---

[19] The New Jersey standard for pleading causation is to plead the existence of fraud and "resulting damages."   *Banco Popular*, 876 A.2d 253 at 260.   The Fischells satisfied that requirement by pleading that they "have been damaged as a result of Cordis's fraudulent omissions, conduct, and fraudulent concealment." (FAC ¶¶ 89, 102).

[20] For example, approving a $300 million verdict in a patent royalty case, the Supreme Court of California held that it was a proper ***jury question*** whether the fact the defendant concealed the existence of certain third party agreements from the plaintiff undercut the defendant's argument that those third party agreements were not subject to the operative royalty provision.   *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 181 P.3d 142, 155 (Cal. 2008).

Mich. 2011) ("The meaning of a contract term that is susceptible to at least two reasonable interpretations is generally an issue of fact . . . .") (citation omitted).

Finally, the Fischells have pled damages.  In reliance on Cordis's misrepresentations regarding the negotiated terms of its agreement with Guidant/Abbott, the Fischells agreed to waive their rights to pre-2004 royalties on Guidant's Royalty Bearing products.  The Fischells now seek damages for the value of those unpaid royalties that total not less than $25 million, plus punitive damages.  Each of those facts is set forth in the First Amended Complaint (*see, e.g.,* ¶¶ 93–95), and it is well-settled New Jersey law that a party induced to enter an agreement by fraudulent misrepresentations may either rescind the agreement or recover damages.  *Maioran v. Calabrese*, 135 A. 69, 70 (1926).  Under either remedy the Fischells may recover the $25 million-plus in pre-2004 royalties that Cordis fraudulently induced to them waive.

Cordis also wrongly asserts that the Fischells were not damaged by Cordis's fraudulent misrepresentations and non-payment of millions of dollars in patent royalties in 2004—and thus cannot maintain a claim—because they are now able to file a lawsuit seeking compensatory damages.  (Def's Br. at 24.)  This is nonsensical, and Cordis cites no law supporting its notion that bringing a lawsuit for fraud forecloses a plaintiff's claim that it was damaged.  The Fischells have pled a valid fraud claim.

### 2.    The Fischells' fraudulent inducement claim is not barred by New Jersey's economic loss doctrine

The Fischells' claims that they were fraudulently induced to agree to modify the 1999 Agreement and waive their rights to royalties for Guidant's pre-2004 sale of Royalty Bearing stents is not barred by New Jersey's economic loss doctrine.

As Cordis concedes in its Motion, there is no binding authority from a New Jersey state court holding that the economic loss doctrine bars fraud claims (Def's Br. at 24), and multiple

New Jersey courts have described the body of case law surrounding the doctrine as "unsettled" or "a morass." *See, e.g.*, *Q Capital Corp. v. Wilmington Trust Co.*, No. A-2780-05T5, 2007 WL 93231, at *3 (N.J. Super. Ct. App. Div. Jan. 12, 2007); *Gleason,* 243 F.3d at 144.

The one thing that is clear is that New Jersey's economic loss doctrine does ***not*** apply to fraudulent inducement claims like the Fischells have asserted here. *Gleason*, 243 F.3d at 144; *Touristic Enterprises Co. v. Trane Inc.*, No. 09-02732 (SRC), 2009 WL 3818087, at *3 (D.N.J. Nov. 13, 2009) ("Fraud claims based on fraudulent inducement are not barred by the economic loss doctrine."); *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. CIV.A. 03-1026 (MLC), 2007 WL 4554208, at *28 (D.N.J. Dec. 21, 2007) *aff'd*, 552 F. App'x 110 (3d Cir. 2014). Even Cordis's authorities agree. *See, e.g.*, *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 563–644 (D.N.J. 2002) ("New Jersey federal and state decisions that have permitted a fraud claim to proceed with a breach of contract claim generally appear to have involved a fraud in the inducement of a contract . . . .").

So it is here. The Fischells have pled that Cordis made misrepresentations to them about the terms of Cordis's sublicense with Guidant/Abbot that induced the Fischells to agree to waive their contractual rights to pre-2004 royalties on Guidant's Royalty Bearing products. (FAC ¶¶ 91–93, 96.) The Fischells' waiver of their contractual rights was a modification of the 1999 Agreement,[21] and New Jersey's economic loss doctrine does apply to claims for fraudulently induced contract modifications. *Am. Fin. Res., Inc. v. Countrywide Home Loans Servicing, LP*, No. 12-7141 ES, 2013 WL 6816394, at *9 (D.N.J. Dec. 23, 2013) ("Fraud in the inducement is not prohibited by the economic loss doctrine . . . ."); *Id.* ("[I]nducement claim can only occur during contract formation or modification."). New Jersey's economic loss doctrine does not bar

---

[21] Waiver, "the intentional relinquishment of a known right," is a form of contract modification. *W. Jersey Title & Guar. Co. v. Indus. Trust Co.*, 141 A.2d 782, 786 (N.J. 1958).

the Fischells' claim that Cordis fraudulently induced them to waive their right to pre-2004 patent royalties.

## E.   Count V (Unjust Enrichment)

Cordis's argument to dismiss the Fischells' unjust enrichment claim fails because Cordis's authority is inapplicable and inapposite. Alternative pleading is expressly permitted under the Federal Rules of Civil Procedure, and New Jersey's highest court has repeatedly affirmed that dismissing unjust enrichment claims is inappropriate at the pleadings stage.[22] *See* Fed. R. Civ. P. 8(d)(2) – (3); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 529 (D.N.J. 2008); *MK Strategies, LLC, v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736 (D.N.J. 2008); *see also Connecticut Gen. Life Ins. Co. v. Roseland Ambulatory Ctr. LLC*, No. 2:12-CV-05941 (DMC), 2013 WL 5354216, at *4 (D.N.J. Sept. 24, 2013) (permitting fraud and unjust enrichment claims to proceed past pleadings stage). Such alternative pleading is particularly appropriate here, as according to Cordis's interpretation of the 1999 Agreement, the Fischells cannot bring contract or fraud claims for the royalties they seek. (Def's Br. at 22–23 and n. 7.) *See Ajuba*, 871 F. Supp. 2d at 692 (denying motion to dismiss unjust enrichment claim pled as alternative to breach of contract claim). The Court should deny Cordis's Motion.

## V.   CONCLUSION

For the reasons set forth above, the Court should deny Cordis's Motion, or, alternatively, set an evidentiary hearing on jurisdiction and venue or grant the Fischells leave to amend their claims.

---

[22] Tellingly, Cordis cites only **summary judgment** opinions here. (*See* Def.'s Br. at 25 (citing *Russell-Stanley Corp. v. Plant Indus., Inc.*, 595 A.2d 534, 550 (N.J. Super. Ct. Ch. Div. 1991) and *Winslow v. Corporate Express, Inc.*, 834 A.2d 1037, 1047 (N.J. Super. Ct. App. Div. 2003).)

Dated: July 31, 2015

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By: /s/ J. Michael Huget
J. Michael Huget (MI P39150)
Jeffrey K. Lamb (MI P76738)
Brittany D. Parling (MI P78870)
130 S. First Street, 4th Floor
Ann Arbor, MI 48104
(734) 418-4200
(734) 418-4257 Fax
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 31, 2015, I served a copy of the foregoing document upon all counsel of record via the Court's ECF system.

/s/ J. Michael Huget
J. Michael Huget